Timothy W. GRIGGS; Catherine H. Griggs, Individually and as Parents and Natural Guardians of Zachary Griggs; Zachary Griggs, a Minor, Timothy W. Griggs and Catherine H. Griggs, Appellants,

v.

BIC CORPORATION.

No. 92–7173.

United States Court of Appeals,
Third Circuit.

Argued Sept. 24, 1992.

Decided Dec. 31, 1992.

Richard C. Angino (Argued), Joseph M. Melillo, Angino & Rovner, P.C., Richard B. Swartz, Caldwell & Kearns, Harrisburg, PA, for appellants.

Michael B. Oropollo (Argued), Hoagland, Longo, Oropollo & Moran, New Brunswick, NJ, David E. Turner, Bradley D. Miller, Bingham, Hess, Coblents & Bell, Reading, PA, for appellee.

Before: MANSMANN, ROTH, and ROSENN, Circuit Judges.

OPINION OF THE COURT

ROSENN, Circuit Judge.

This diversity litigation arises out of serious injuries sustained by an infant as a result of a childplay fire ignited with a disposable butane cigarette lighter by his older half-brother. Two principal issues are raised on appeal, one of which the parties agree is an issue of first impression, namely, whether the lighter was defective under strict products liability law because it was not designed by the manufacturer to be "childproof." [1] The second issue is whether the manufacturer had a duty under negligence law to manufacture a childproof lighter when childplay lighter fires were foreseeable and a childproof safety design was feasible at the time. The district court granted the manufacturer's motion for summary judgment. *Griggs v. BIC Corp.*, 786 F.Supp. 1203 (M.D.Pa.1992). The court concluded that the manufacturer had no duty under strict liability law to manufacture a lighter resistant to child play and that BIC was entitled to summary judgment on the negligence claim as well. The plaintiffs timely appealed. We affirm on the issue of strict liability, but reverse on the issue of negligence.

---

1. The term "childproof" is used in this opinion to refer to childproof and child resistant designs.

## I.

The material facts are not in dispute and can be stated briefly. On October 10, 1985, Zachary Griggs, then aged 11 months, sustained serious injuries in a fire at his Pennsylvania home that his three year old stepbrother, Kenneth Hempstead, ignited with a disposable butane cigarette lighter manufactured by the defendant BIC Corporation (BIC). Kenneth removed the lighter from his stepfather's pants pocket in the early hours of the morning and set fire with it to Zachary's bedding while the rest of the household slept. Two incidents within six months preceded this fire, in which Kenneth attempted to light either matches or a lighter, of which his parents were aware and for which they disciplined Kenneth. Prior to Zachary's injuries, his mother had seen warnings that BIC placed on the packaging of its lighters to keep them away from children. She was also independently aware that these lighters should be kept out of the reach of children.

Plaintiffs, Timothy W. Griggs and Catherine H. Griggs, individually and as parents and guardians of Zachary, sued BIC in the United States District Court for the Middle District of Pennsylvania, alleging that BIC's failure to manufacture a childproof lighter constituted both defective and negligent design.

## II.

Our review of the district court's grant of summary judgment is plenary. *Carlson v. Arnot–Ogden Memorial Hosp.*, 918 F.2d 411, 413 (3d Cir.1990). "[T]he appellate court is required to apply the same test the district court should have utilized initially." *Colgan v. Fisher Scientific Co.*, 935 F.2d 1407, 1413 (3d Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991)

(quoting *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977)). The district court shall render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories, and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Federal courts sitting in diversity "must apply the substantive law of the state whose laws govern the action." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir.1990) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).[2] We therefore turn to the substantive law of Pennsylvania to evaluate the propriety of the district court's grant of summary judgment in this case. "In cases where the state's highest court has not considered the precise question to be answered, the federal court is called upon to predict how the state court would resolve the issue should it be called upon to do so." *Id.* (citations omitted).

## III.

In *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853, 854 (1966), the Pennsylvania Supreme Court adopted section 402A of the Restatement (Second) of Torts (hereinafter Restatement) as the law of strict products liability in Pennsylvania.[3] That court subsequently established that section 402A "imposes strict liability in tort not only for injuries caused by the defective *manufacture* of products, but also for injuries caused by defects in their *design*." *Lewis v. Coffing Hoist Div., Duff–Norton Co.*,

---

**2.** The parties did not dispute the application of Pennsylvania law by the district court, and we apply it on appeal.

**3.** Section 402A of the Restatement (Second) of Torts (1965) provides:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer ... is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

515 Pa. 334, 528 A.2d 590, 592 (1987) (citations omitted).

A central goal of strict liability doctrine is to relieve the plaintiff of proof problems associated with negligence and warranty theories of liability. The Pennsylvania Supreme Court has stated that "[s]trict liability requires, in substance, only two elements of requisite proof: the need to prove that the product was defective, and the need to prove that the defect was a proximate cause of the plaintiff's injuries." *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893, 898 (1975) (footnote omitted).[4] The Supreme Court of Pennsylvania adopted this goal on the principle that the realities of our economic society today compel "the conclusion that the risk of loss for injury resulting from defective products should be borne by the suppliers, principally because they are in a position to absorb the loss by distributing it as a cost of doing business." *Azzarello v. Black Bros. Co.*, 480 Pa. 547, 391 A.2d 1020, 1023 (1978).

Courts, keeping pace with the advances in our complex industrial and commercial world, have concluded that the doctrine of *caveat emptor,* which prevailed in the early nineteenth century marketplace to protect an emerging manufacturing industry, should give way to a concept more concerned with a helpless consumer who is vulnerable to the perils of such products because of the aggressive marketing and advertising tactics of today's commercial world.[5] Most courts have therefore adopted the concept that the suppliers of defective products should bear the risk of loss without regard to fault or privity of contract. *Id.* 391 A.2d at 1024.

The plaintiffs maintain, therefore, that under the strict products liability rule adopted by Pennsylvania, misuse or abuse of a product is not a defense to products liability claims. They argue that the Pennsylvania rule is that products "used in an unintended manner can be judged defective if the change, misuse, or abuse is foreseeable to the manufacturer." Thus, they do not claim the BIC lighter was defective because it failed to perform in the manner for which it was intended, but that it was defective because it was not childproof. They also make the expansive claim, citing *Azzarello* and *Berkebile,* that "[i]t has been determined that industry can and should pay for *all* injuries and deaths that are caused by defective or unsafe products." In other words, they assert that under current law the manufacturer is an insurer of injuries caused by defective or unsafe products.

Our focus at this point of review is, therefore, on the elements of product defect. The determination of whether a product is defective has two parts. *Foley v. Clark Equip. Co.*, 361 Pa.Super. 599, 523 A.2d 379, 382 (citing *Azzarello,* 391 A.2d at 1020), *appeal denied,* 516 Pa. 614, 531 A.2d 780 (1987), *disapproved en banc on other grounds,* 370 Pa.Super. 611, 537 A.2d 334 (1988). The first requires the court to determine as a matter of law where the risk of loss shall fall in a given strict liability case. If the court, taking the plaintiffs' averments regarding the condition of the product as true, determines that the risk of loss should fall on the manufacturer as a matter of law, then the second part of the determination must be made. Only then is it up to the fact finder to determine if the product was indeed sold in a defective condition as alleged. *Azzarello,* 391 A.2d at 1025–26.

While a lay finder of fact is obviously competent in resolving a dispute as to the condition of a product, an entirely

---

**4.** The section 402A(1) term "unreasonably dangerous" has no independent significance under Pennsylvania law; it "merely represent[s] a label to be used where it is determined that the risk of loss should be placed upon the supplier." *Azzarello v. Black Bros. Co.*, 480 Pa. 547, 391 A.2d 1020, 1025 (1978). The *Azzarello* court points out that the term presents a difficulty because it "tends to suggest considerations which are usually identified with the law of negligence." *Id.*

**5.** The enormous number of new products reaching just a part of the retail marketplace is reported in a recent article in the *New York Times.* "This year, 16,000 new products have arrived in supermarkets and drug stores." Trish Hall, *Telling the "Yeas" from the "Nays" in New Products,* N.Y. Times, Dec. 9, 1992, at C1.

different question is present where a decision as to whether that condition justifies placing liability upon the supplier must be made.... Should an ill-conceived design which exposes the user to the risk of harm entitle one injured by the product to recover? ... [This is a question] of law and [its] resolution depends upon social policy.... It is a judicial function to decide whether, under plaintiff's averment of the facts, recovery would be justified; and only after the judicial determination is made is the cause submitted to the jury to determine whether the facts of the case support the averments of the complaint.

*Id.* (footnote omitted). A judicial determination that Pennsylvania's social policy does not support placing the risk of loss on the manufacturer in a strict products liability case is the equivalent of a judicial conclusion that the product is not defective under strict products liability law, and courts often mix the vocabulary of the two inquiries as they analyze this threshold question of law.

■ In *Lewis*, the court described three alternative tests used by courts in various jurisdictions to determine whether the manufacturer should bear the risk of loss in a design defect case: the "consumer expectations test," the "risk-utility test," and its own test set forth in *Azzarello*.[6] 528 A.2d at 593. Under *Azzarello*, the existence of a defect is intimately related to the product's intended use because the product is defective only if it "left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for the intended use." *Azzarello*, 391 A.2d at 1027 (footnote omitted).

■ Based on the *Azzarello* standard, the trial court in this case concluded that "a product may not be deemed defective unless it is unreasonably dangerous to *intended users.*" *Griggs*, 786 F.Supp. at 1205. Although the parties in this case apparently agree that BIC's lighters are not intended for use by unsupervised children, the plaintiffs maintain that the court erred when it substituted "intended user" for "intended use" in the *Azzarello* standard, thus limiting the safety inquiry to adults.[7] This is an illusory distinction, however, because the concept of intended use impliedly encompasses the participation of an intended user. Thus, because children are not intended users, BIC is not strictly liable.

Plaintiffs further alleged, however, that BIC is strictly liable under section 402A because it designed a lighter unreasonably dangerous to foreseeable users, young children. They contend that BIC knew that its disposable butane lighters were attractive to children, could be easily lit by children as young as age 3, "and that every year a substantial number of fires were in fact caused by young children who obtained and used BIC lighters." Plaintiffs also claim that they were prepared to prove that thousands of children have been killed or seriously injured in childplay fires over the

---

6. The plaintiffs contend that Pennsylvania law dictates the use of a risk-utility analysis that takes foreseeability into account in order to make this threshold determination, rather than following the court's *Azzarello* approach. Although the supreme court has acknowledged the existence of a risk-utility approach to this question, Pennsylvania courts have declined to embrace it. *See, e.g., Lewis*, 528 A.2d at 592; *Dauphin Deposit Bank & Trust Co. v. Toyota Motor Corp.*, 408 Pa.Super. 256, 596 A.2d 845, 849 (1991); *Hite v. R.J. Reynolds Tobacco Co.*, 396 Pa.Super. 82, 578 A.2d 417, 421 (1990), *appeal denied*, 527 Pa. 666, 593 A.2d 842 (1991). Additionally, the supreme court has specifically stated that foreseeability "is a test of negligence.... [I]t is irrelevant in a strict liability case." *Berkebile*, 337 A.2d at 900. The Griggses' contention is therefore meritless under Pennsylvania law.

7. The Griggses seem to suggest that Kenneth did use the lighter for its intended use, i.e., to produce a flame, and so their case falls under and satisfies the *Azzarello* standard because, gauging by the results of Kenneth's "intended use," the product must be lacking an element necessary to make it safe for its intended use. This suggestion requires a convoluted reading of the standard that is nowhere suggested by the Pennsylvania courts' application.

Alternatively, the Griggses seem to be trying to equate "intended" use with "expected" use, which then allows them to connect children with lighters by using foreseeability evidence, where something that may be foreseeable is then expected. Foreseeability, however, plays no part in the initial determination of defect in strict liability. *Berkebile*, 337 A.2d at 900. This is therefore a futile line of reasoning.

past twenty years and that BIC knew or should have known that a much safer child resistant lighter design was feasible at the time of the accident.

The defendant accepted the plaintiffs' feasibility and foreseeability allegations for purposes of the summary judgment motion, but argued that the issue was restricted to whether it had a duty to make its lighter childproof, not whether it was feasible to do so, or whether the danger was foreseeable.

The plaintiffs rely heavily on *Suchomajcz v. Hummel Chemical Co.*, 524 F.2d 19 (3d Cir.1975), to support their strict liability claim. This case, however, is inapposite as to this specific claim. As BIC notes, *Suchomajcz* is not a products liability case, does not involve allegations of product defect, and predates *Azzarello*. Rather, it stated a negligence action, and we discuss it more fully later in this opinion in connection with the negligence issue raised by plaintiffs. The plaintiffs have cited numerous cases which we have reviewed. None of them supports the contention that in Pennsylvania a manufacturer has a duty in strict liability law to guard against foreseeable use by unintended users in the context of the initial determination of defect.

The district court noted in its opinion that defendant did not dispute the past injuries to children through use of butane lighters and that it was undisputed that the lighter in question was not actually defective in that it performed the function for which it was designed. Because the plaintiffs do not contend that the lighter was unsafe for its intended use, the trial court committed no error in holding that the lighter was not defective and that BIC as a matter of law should not bear the risk of loss. Accordingly, the trial court did not err in granting BIC's motion for summary judgment because of the alleged product defect.

## IV.

■ We now turn to the second and more formidable of plaintiffs' claims: whether the manufacturer owed a duty to the injured victim under common law negligence which it violated, resulting in the injuries sustained. Pennsylvania courts have set forth the elements of negligence as follows:

1) A duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks;

2) A failure to conform to the standard required;

3) A causal connection between the conduct and the resulting injury; and

4) Actual loss or damage resulting to the interests of another.

*Morena v. South Hills Health Sys.*, 501 Pa. 634, 462 A.2d 680, 684 n. 5 (1983) (citing William L. Prosser, *Law of Torts* § 30, at 143 (4th ed. 1971)); *Fennell v. Nationwide Mut. Fire Ins. Co.*, 412 Pa.Super. 534, 603 A.2d 1064, 1066–67 (1992). At issue in this aspect of the present case is the element of duty. Normally, "[t]he determination of what duty, if any, a defendant owes to potential plaintiffs is a question of law." *Burton v. Terry*, 140 Pa.Commw. 336, 592 A.2d 1380, 1383 (1991), *appeal denied*, 529 Pa. 665, 604 A.2d 1031 (1992).

■ Under Pennsylvania law, no tort liability may be imposed upon a defendant who does not owe a duty to the injured plaintiff. *See Boyce v. United States Steel Corp.*, 446 Pa. 226, 285 A.2d 459, 461 (1971); *Peatross v. Southwark Minit–Man Corp.*, 415 Pa. 129, 202 A.2d 102, 103 (1964). In properly determining that BIC's lighter was not defectively designed under strict liability law, the district court concluded that BIC had "no duty to childproof its lighters." *Griggs*, 786 F.Supp. at 1209. The district court relied on this conclusion in its strict products liability rationale to establish the absence of duty in negligence.[8] Thus, the immediate question is

---

**8.** BIC contends that the duty requirement is identical in strict liability and negligence claims. The only Pennsylvania Supreme Court decision cited for this proposition, *Azzarello*, 391

A.2d at 1020, does not support it. The Pennsylvania Superior Court case cited, *Dauphin*, 596 A.2d at 850–51, in turn accepts as persuasive a Texas Court of Appeals decision in a strict liabil-

whether under Pennsylvania law the absence of "duty" to the unintended user in strict liability also is determinative of the absence of duty in negligence. As the Pennsylvania Supreme Court has not directly decided this subtle question, we must predict how it would resolve the issue if presented to it.

■ The Pennsylvania Supreme Court has attempted to insulate the concepts and vocabulary of negligence from those of strict liability. In *Azzarello,* the court pointed out that the "unreasonably dangerous" language of section 402A presents difficulty because it "tends to suggest considerations which are usually identified with the law of negligence." 391 A.2d at 1025. The court therefore stated that the words " 'unreasonably dangerous' have no independent significance and merely represent a label to be used when it is determined that the risk of loss should be placed upon the supplier." *Id.* The court also has noted that foreseeability is a test of negligence that is irrelevant in the context of strict liability. *Berkebile,* 337 A.2d at 900. More recently, the court flatly stated that "negligence concepts have no place in a case based on strict liability." *Lewis,* 528 A.2d at 593.

Confusion has arisen because a number of courts have chosen the term "duty" as a shorthand for the threshold determination in strict liability that social policy supports placing the risk of loss in a given case on the seller. Duty is an historic concept closely identified with negligence, and a conclusion that a duty exists under negligence law expresses the existence of foreseeability of harm and serves as a predicate for fault, a highly important element of negligence liability. However, foreseeability and fault have no place in strict liability, and indeed, the district court's analysis of the strict liability claim properly did not incorporate either concept.

More than just highlighting the Pennsylvania Supreme Court's attempts to maintain strict liability and negligence as two independent grounds for a personal injury claim, these observations point to an impor-

tant theoretical basis for such a separation: The underlying analyses necessary to reach each legal conclusion of duty are qualitatively different. As we observed earlier, foreseeability properly did not enter into the determination that yielded the "no duty" conclusion in strict liability. Foreseeability, however, is an integral part of a determination that a duty does exist in Pennsylvania negligence law. *Carson v. City of Philadelphia,* 133 Pa.Commw. 74, 574 A.2d 1184, 1187 (1990). The Pennsylvania Supreme Court has stated that "[t]he test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act.... 'The risk reasonably to be perceived defines the duty to be obeyed[.]' " *Dahlstrom v. Shrum,* 368 Pa. 423, 84 A.2d 289, 290–91 (1951) (quoting *Palsgraf v. Long Island R.R.,* 248 N.Y. 339, 162 N.E. 99, 100 (1928)); *Zilka v. Sanctis Constr., Inc.,* 409 Pa. 396, 186 A.2d 897, 901 (1962), *cert. denied,* 374 U.S. 850, 83 S.Ct. 1915, 10 L.Ed.2d 1070 (1963).

Because foreseeability is an integral part of the duty analysis in negligence, and because the "duty" analysis in strict liability eschews foreseeability as an element, holding "no duty" in strict liability does not *per se* eliminate consideration of the duty factor in negligence law. We believe, therefore, based on its precedent that strives to maintain the difference between negligence and strict liability law, that the Pennsylvania Supreme Court would reject the proposition that the social policy determination as to product defect in strict liability is the equivalent of a determination of duty in negligence law.

■ Given that BIC conceded foreseeability for purposes of its summary judgment motion, a finding of duty in negligence would turn on the last remaining piece of the traditional duty puzzle: whether the foreseeable risks were unreasonable. The Pennsylvania Supreme Court has not decided this question and we must therefore predict how it would respond. The classic model for analyzing this aspect of

ity and negligence case based on failure to warn where the Texas court substituted "no duty" in strict liability for no duty in negligence in a

conclusory way without analyzing whether the inquiries are coextensive.

negligence law is the risk-utility form of analysis, which balances "the risk, in the light of the social value of the interest threatened, and the probability and extent of the harm, against the value of the interest which the actor is seeking to protect, and the expedience of the course pursued." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 31, at 173 (5th ed. 1984) (footnotes omitted) (hereinafter *Prosser and Keeton*); *see also Benson v. Pennsylvania Cent. Transp. Co.*, 463 Pa. 37, 342 A.2d 393, 397 (1975); *Clewell v. Pummer*, 384 Pa. 515, 121 A.2d 459, 462 (1956); Restatement §§ 291–93.

As guidance for analyzing the probability and extent of the harm in the context of unreasonable risk, Prosser and Keeton state the following:

> No person can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.... On the other hand, if the risk is an appreciable one, and the possible consequences are serious, the question is not one of mathematical probability alone.... As the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less to generate a duty of precaution.

*Prosser and Keeton* § 31, at 170–71 (footnotes omitted).

Before analyzing and balancing these factors to determine if the foreseeable risk in this case is unreasonable, a review of the record evidence provides some statistical background. In an Advance Notice of Proposed Rulemaking published in the Federal Register by the Consumer Product Safety Commission, 53 Fed.Reg. 6833 (1988), the Commission computed national fire loss estimates for 1980 through 1985, inclusive.

> Residential fires started by children playing with lighters are estimated to have taken an average of 120 lives each year.... [O]n average at least 750 per-

sons were injured each year in residential fires started by children playing with lighters.... The annual cost of child-play lighter fires [is] $300–375 million or 60–75 cents per lighter sold.[9]

*Id.* at 6836.

Based on the Commission's report, the gravity of the possible harm, in terms of both personal injury and property damage by childplay fires, is appreciable, recurring, and serious. The social value of the safety to be secured is indisputably high. These statistics suggest further that the likelihood of the occurrence of harm is sufficiently substantial to generate a duty of precaution, a conclusion which is reinforced by BIC's concession of foreseeability.

The factors to be considered when analyzing the utility of the conduct in question, i.e., the reason for the failure to childproof the lighter, must be balanced against the probability and gravity of the risk. *Prosser and Keeton* § 31, at 171; Restatement §§ 291–93. They are: (1) "the social value of the interest which the actor is seeking to advance"; and (2) "any alternative course open to the actor." *Prosser and Keeton* § 31, at 171–72; Restatement § 292. The only interest BIC can be seeking to advance by not childproofing its lighter is one of cost and its own economic health. A manufacturer's economic health is undeniably valuable to society for many reasons, including the bearing it has on the employment of workers, the payment of taxes, and the availability of a socially useful product. Because BIC has also conceded the feasibility of childproofing the lighter for purposes of its summary judgment motion, it presumably had economic alternatives, unless childproofing the lighter would impair the lighter's usefulness or make it too expensive to maintain its marketability. Tying this conclusion to social value considerations, if the design change would not make the lighter too expensive to maintain its utility and marketability, then it is reasonable to expect that the consumer would still buy it with the cost of the design change incorporated.

---

**9.** "The average price for the product is less than one dollar." 53 Fed.Reg. at 6836. Thus, dollar for dollar, these lighters are involved in causing almost as much damage through childplay as they generate in sales at the retail level.

On balance, the high social value placed on the safety of people and property threatened by childplay fires, the high gravity of risk, the considerable probability of risk, and the likelihood of a reasonably available alternative may outweigh BIC's interest in producing its lighters without childproofing features. In such circumstances, the risk of omission would be unreasonable.

In *Suchomajcz v. Hummel Chemical Co.*, we applied this risk-utility analysis in a case bearing similar issues to the present one. In *Suchomajcz*, two minor children were killed and four injured when a bottle abandoned by a minor child containing firecracker chemicals exploded when a third party threw a match into the bottle. The plaintiffs sued the chemical manufacturer who had sold the chemicals to a buyer that was known by the manufacturer to be selling firecracker kits illegally. The trial court granted the manufacturer's summary judgment motion on plaintiffs' negligence claim. 524 F.2d at 22–24.

We held that the alleged facts presented a jury question as to whether the manufacturer violated its duty to avoid conduct which might involve an unreasonable risk of harm through the foreseeable action of a third party. *Id.* at 29. We also pointed out in this case decided under Pennsylvania negligence law that the doctrine of intended use for the product "cannot shield a manufacturer from liability resulting from misuse of a product if that misuse is foreseeable." *Id.* at 28. We further noted that the principle making a manufacturer

> liable for a foreseeable misuse of his product is consistent with the more general Pennsylvania rule that the intervening negligent act of a third party does not constitute a superseding cause shielding a tortfeasor from liability unless the intervening act was unforeseeable, highly extraordinary, or extraordinarily negligent. *Flickinger v. Ritsky,*

452 Pa. 69, 305 A.2d 40, 43 (1973). *See Restatement* § 447.

*Id.* at 28. We therefore reversed the grant of summary judgment.

Our foundation preceding the risk-utility analysis in *Suchomajcz* is equally applicable to the present case. As with the chemical manufacturer in *Suchomajcz*, the scope of BIC's duty to avoid negligent conduct appropriately may be measured by section 302(b) of the Restatement which provides that "[a] negligent act or omission may be one which involves an unreasonable risk of harm to another through ... the foreseeable action of ... a third party." [10]

Paralleling the Pennsylvania elements of negligence, section 302(b) requires that the risk of harm be unreasonable before an act may be found to be negligent. "The standard for determining reasonableness is whether the magnitude of the risk of harm outweighs the social utility of the act." *Suchomajcz*, 524 F.2d at 24 (citing Restatement § 291). In *Suchomajcz*, we concluded that the magnitude of the risk created by the manufacturer's sale of chemicals to the buyer, when the manufacturer knew of the intended use of the chemicals, was considerable because there was a significant possibility that the firecracker kits would cause serious bodily harm to a number of people; additionally, the social utility of such sales was deemed minimal. *Id.; see* Restatement § 293. Similarly, in the present case, the magnitude of the risk in selling lighters without childproof features to the public, when BIC knew the frequency with which they are ignited ·and used by children with access to them to set childplay fires, may have been considerable because of the significant possibility that the lighters would cause serious bodily harm to a number of people. The social utility of sales without childproof features may also be minimal.

---

**10.** The predecessor to section 302(b) and its special applications often have been cited with approval by the Pennsylvania Supreme Court. *See, e.g., Snoparsky v. Baer,* 439 Pa. 140, 266 A.2d 707 (1970); *Anderson v. Bushong Pontiac Co.,* 404 Pa. 382, 171 A.2d 771 (1961); *Tua v.*

*Brentwood Motor Coach Co.,* 371 Pa. 570, 92 A.2d 209 (1952). This court also has recognized section 302(b) as correctly stating the law of Pennsylvania. *See Smith v. Hobart Mfg. Co.,* 302 F.2d 570 (3d Cir.1962).

■ As discussed *infra,* we noted in *Suchomajcz* that "Pennsylvania does impose liability upon a manufacturer for harm caused by misuse of its product, if that misuse was foreseeable." In the instant case, BIC apparently could foresee that children who had access to the lighters would misuse them in their current state. As we have observed, the social utility of selling lighters without a childproof design may be minimal; the social consequences of such sales may be catastrophic. *Suchomajcz,* 524 F.2d at 25. Thus, the risk of harm with respect to duty may indeed be unreasonable.

Recently, the Alabama Supreme Court resolved an issue very similar to the one we face in this case. In *Bean v. BIC Corp.,* 597 So.2d 1350 (Ala.1992), a four-year-old girl was killed in a childplay lighter fire set by the girl and her five-year-old brother. The girl's parents sued BIC, alleging, *inter alia,* negligent design based on the lack of features to make the lighter childproof. As in the present case, BIC conceded foreseeability and feasibility for purposes of its summary judgment motion, which the trial court granted.

On appeal, the Alabama Supreme Court alternatively formulated the principal issue as "whether a manufacturer will ever have a duty to make a product intended to be used by adults safer by designing and manufacturing the product to deter or discourage use by children unable to appreciate the risks involved in use of the product." 597 So.2d at 1352. The court "decline[d] to make the sweeping and decisive pronouncement that a manufacturer of a product that it intends to be used by adults never has a duty to make the product safer by making it child-resistant when the dangers are foreseeable and prevention of the danger is feasible." *Id.* The court observed that duty "remains a function of foreseeability of the harm tempered by a consideration of the feasibility of an alternative." *Id.* The court therefore found the grant of summary judgment to be improper.

A few final points must be addressed. First, BIC asserts the prevailing wisdom that strict liability is purportedly easier to prove than negligence, implying that the failure of a strict liability claim should automatically be fatal to a negligence claim based on the same nucleus of operative facts. This might be true if the negligence inquiry differed from the strict liability inquiry by simply requiring an additional element, e.g., defect and causation plus fault. *See Dambacher v. Mallis,* 336 Pa.Super. 22, 485 A.2d 408, 424 (1984) ("[I]n a negligence case the plaintiff must prove, not only that the defect caused his injury and that the product was defective, but in addition, that in manufacturing or supplying the product the defendant failed to exercise due care."), *appeal dismissed,* 508 Pa. 643, 500 A.2d 428 (1985).

Viewing the negligence claim as merely one step beyond strict liability, however, obscures the true difference between negligence and strict liability under Pennsylvania law. In strict liability, the focus is on a defect in the product, regardless of fault, *Lewis,* 528 A.2d at 593, and that defect is determined in relation to a particular subset of the general population: the intended user who puts the product to its intended use. In negligence, the focus is on the reasonableness of a defendant's conduct, *id.,* and this reasonableness is determined in relation to a different subset of the general population, and one that is conceivably broader: anyone who foreseeably may be subject to an unreasonable risk of foreseeable harm.

Rather than looking at strict liability as an easier claim to prove, it is more fruitful to recognize that Pennsylvania law provides a trade-off between the two types of personal injury claims. In strict liability, the plaintiff need not show fault, but only prove a product defect. A product cannot be defective when its design and performance meet all of the requirements of the intended user, regardless of the foreseeability of misuse by unintended users. In negligence, the plaintiff must prove fault of the manufacturer, which is an element not required in strict liability law. The scope of inquiry, however, expands because of the duty to unintended but foreseeable users. Although the results may very well often be the same in strict liability and

negligence under a given set of facts, the focus of each claim is different, and therefore proof of negligence may be possible without a finding of strict liability.

BIC points out that the Pennsylvania Superior Court in *Dambacher* introduced a product defect as an element of negligence, thereby short-circuiting the traditional negligence analysis. 485 A.2d at 424. We first note that it is just as unfortunate that courts deciding a negligence claim do so in strict liability language as it is that courts deciding a strict liability claim use the language of negligence. The conclusion in strict liability that a product is defective results from the same analysis that produced the conclusion that BIC had "no duty" to childproof the lighter. This analysis does not take into account factors that must be examined in negligence.

It is reasonable, therefore, to predict that the supreme court would reject the *Dambacher* elements in favor of the standard negligence formulation under Pennsylvania law because (1) the *Dambacher* formulation does not maintain the separation of concepts and vocabulary in strict liability and negligence analyses that the supreme court strives for, and more importantly, (2) it reflects a misunderstanding of the theoretical underpinnings of each claim.

Thus, we predict that the Supreme Court of Pennsylvania would hold that if a manufacturer of cigarette lighters may reasonably foresee that they will fall into the hands of children, who, albeit unintended users, can ignite them with a probability of serious injury to themselves and others, and if childproofing the lighters is economically feasible, the manufacturer would have a duty to guard against the unreasonable risk of harm by designing the lighter to be childproof.

## V.

Finally, because BIC has suggested that responsibility for Zachary's injuries falls entirely on the Griggses for failing to keep the lighter out of Kenneth's hands, a word about causation is in order. Under Pennsylvania law, a plaintiff must establish cause in fact, or "but for" causation, and

proximate or legal cause. *Estate of Flickinger v. Ritsky,* 452 Pa. 69, 305 A.2d 40, 42–43 (1973). Cause in fact is a question of fact for the jury. *Id.* To satisfy this element of causation, the plaintiffs must show by a preponderance of the evidence that but for BIC's failure to childproof the lighter, Kenneth would not have been able to use the lighter to start a fire. More simply put, the Griggses must show that the childproof design that was feasible at the time of the injury would have prevented Kenneth from setting a fire with the lighter.

The question of proximate cause, as measured by the "substantial factor" test, is also almost always one of fact for the jury. *White v. Rosenberry,* 441 Pa. 34, 271 A.2d 341, 342 (1970); *Takach v. B.M. Root Co.,* 279 Pa.Super. 167, 420 A.2d 1084, 1086 (1980). Where a defendant is found negligent, "only an independent intervening act of negligence could prevent [the defendant's] negligence from being the proximate cause" of the injury. *Ostrowski v. Crawford Door Sales Co.,* 207 Pa.Super. 424, 217 A.2d 758, 762 (1966). Therefore, to be relieved of liability under this principle of law, if a jury should find the manufacturer negligent, BIC must prove that the plaintiffs were negligent in failing to keep the lighter out of Kenneth's hands and, if successful, that their intervening negligence constituted a superseding cause of Zachary's injuries. *See Flickinger,* 305 A.2d at 43; Restatement § 447.

Therefore, whether BIC should have realized when it sold the non-childproof lighter that parents may negligently fail to keep such lighters away from children, Restatement § 447(a), or alternatively, whether a reasonable person, knowing the lighter was not childproof, would regard it as highly extraordinary that the Griggses had negligently failed to keep the lighter away from Kenneth, *id.* at § 447(b), are questions for the jury to decide.

## VI.

In summary, we conclude that the Pennsylvania Supreme Court would hold that the district court in this case did not err in

holding that BIC's lighter was not defective under strict products liability law, but that it erred in entering summary judgment on the claim under negligence law.

Accordingly, the summary judgment in favor of BIC on the strict liability claim will be affirmed. The summary judgment entered in favor of BIC on the negligence claim will be reversed and the case remanded for further proceedings on this issue consistent with this opinion. Each side to bear its own costs.