Lee C. SMITH and Deborah Smith, Plaintiffs,

v.

SCRIPTO–TOKAI CORP. and TOKAI CORP., Defendants.

No. 99–1707.

United States District Court,
W.D. Pennsylvania.

Nov. 2, 2001.

534

Daniel M. Taylor, Richard G. Lewis, Jones, Gregg, Creehan & Gerace, Pittsburgh, PA, Stephen P. Moschetta, Nicole A. Moschetta, Joseph P. Moschetta & Associates, Washington, PA, for plaintiffs.

Carl A. Eck, Paul R. Robinson, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, PA, Keith A. Sipprelle, Mark K.

Suzumoto, Van Etten, Suzumoto & Hag, San Amonica, CA, for defendants.

## MEMORANDUM ORDER

CINDRICH, District Judge.

This is a case for damages arising out of a residential fire started by plaintiffs' three-year-old child using a butane utility lighter manufactured by defendants. On June 15, 2000, we granted defendants' motion to dismiss all claims except negligence. As to the negligence claim, we explained that we were bound to follow the Court of Appeals' decision in *Griggs v. BIC Corp.*, 981 F.2d 1429 (3d Cir.1992), and chastised defendant's counsel for his lack of candor to the tribunal in failing to acknowledge that case. *See* Memorandum Order dated June 15, 2000, Doc. No. 17.

Pending now are defendants' motion for summary judgment, plaintiff's motion for reconsideration of our dismissal of their products liability claim, defendants' motion to strike plaintiffs' supplemental pretrial statement, and several other motions in this hotly-contested case that we will not address in this opinion.

### I Defendants' Motion for Summary Judgment

Defendants essentially reiterate arguments we rejected in disposing of their motion to dismiss. As they did earlier, Defendants argue that a negligence claim cannot exist in this case where there is no defect in the product, and where the obviousness of the danger negates the existence of any duty. Defendants also argue that the "negligent failure to warn" claim should be dismissed because a clear warning existed. Finally, defendants argue, frivolously, that plaintiff cannot establish causation.

### a. Negligent design claim.

■ As set forth in *Griggs,* 981 F.2d at 1434, plaintiff must establish the following elements of a negligence action: (1) defendants had a duty; (2) defendants failed to conform to the standard required; (3) there was a causal connection between defendants' conduct and the resulting injury; and (4) damages. The "duty" element has two components: foreseeability and unreasonableness. Although foreseeability is not part of a strict liability claim, foreseeability "is an integral part of a determination that a duty does exist in Pennsylvania negligence law." *Id.* at 1435. Unreasonableness is evaluated under the risk-utility analysis. *Id.* at 1435–36.[1]

In this case, the Aim 'n Flame lighter is a consumer product and there is "abundant empirical data demonstrating that Tokai could have foreseen the risk of an unsupervised child causing injury by using a lighter." *Hittle v. Scripto–Tokai Corp.,* 166 F.Supp.2d 142 (M.D.Pa. 2001). Further, the risk is unreasonable because the high social value placed on the safety of people and property threatened by child-play fires, the high gravity and considerable probability of the risk, and the likelihood of a reasonably available alternative (childproofing) outweigh defendants' interest in producing its lighters without childproofing features. *Id.* at 152–53 (citing *Griggs* ). Thus, as the Court of Appeals held in *Griggs,* "if a manufacturer of cigarette lighters may reasonably foresee that they will fall into the hands of children, who, albeit unintended users, can ignite them with a probability of serious injury to themselves and others, and if childproofing the lighters is economically feasible, the manufacturer would have a duty to guard against the unreasonable risk of harm by designing the lighter to be childproof." 981 F.2d at 1439. Accordingly, plaintiffs have established the "duty" element of their negligence claim. Plaintiffs have also established that defendants breached that duty. Indeed, defendants do not seriously contend that the Aim'n Flame lighter at issue here had appropriate child safety features.

■ There are material disputes of fact that prevent causation from being established as a matter of law. Plaintiffs point out that an Aim'n Flame lighter was recovered from the wreckage of the home, underneath the point of origin of the fire. Defendants, not so subtly, seek to imply that this evidence was planted. If defendants wish to risk alienating the jury by pursuing this line of reasoning, they shall have that opportunity.[2]

Finally, the existence of damages is undisputed. However, a jury will have to determine the amount of such damages.

In summary, defendants' motion for summary judgment on the negligent design theory will be denied. Plaintiffs have established, as a matter of law, that defendants had a duty to manufacture a childproof lighter and breached that duty. The case will proceed to trial on the issues of causation and damages.

### b. Negligent warning claim.

■ A defendant may be liable for negligence if he (1) knows that the chattel is in a dangerous condition; (2) has no reason to believe that those for whose use the chattel is supplied will realize the dan-

---

1. In *Surace v. Caterpillar, Inc.,* 111 F.3d 1039 (3d Cir.1997), the Court of Appeals disclaimed the precedential value of *Griggs'* strict liability analysis, but did not question

*Griggs'* validity as to Pennsylvania negligence law.

2. We do not resolve at this time whether the child who started the fire may testify.

gerous condition; and (3) fails to warn those for whose use the chattel is supplied of the dangerous condition. *Overbeck v. Cates,* 700 A.2d 970, 972 (Pa.Super.1997). A warning is sufficient if it adequately notifies the intended user of the unobvious dangers inherent in the product. *J. Meade Williamson and F.D.I.B., Inc. v. Piper Aircraft Corp.,* 968 F.2d 380, 387 (3d Cir.1992). A manufacturer has no duty to warn of obvious risks. *Metzgar v. Playskool, Inc.,* 30 F.3d 459, 460, 465–66 (3d Cir.1994).

 The standard of "obviousness" is the same in strict liability and negligence cases. *Id.* at 465. However, unlike a strict liability case, "under a negligence theory, although a failure to warn claim may be defeated if the risk was obvious or known, the question of obviousness is more properly submitted to a jury than disposed on motion for summary judgment." *Id.* at 466. Plaintiff has submitted an expert report identifying flaws in the warning on the Aim n' Flame. Accordingly, we conclude that this claim must be submitted to the jury. *But see Hittle,* at 155 & n. 6 (concluding that danger of child starting fire was obvious and that defendants' warning on the lighter was adequate as a matter of law).

*II Plaintiff's Motion for Reconsideration*

 We granted defendants' motion to dismiss plaintiffs' products liability claim pursuant to the Court of Appeals' decision in *Griggs,* 981 F.2d at 1434. Plaintiffs ask us to reconsider our decision in light of the recent decision by the Pennsylvania Superior Court in *Phillips v. Cricket Lighters,* 773 A.2d 802, 2001 WL 346061 (Pa.Super. April 10, 2001) (involving a disposable butane lighter without child-resistant features). In *Phillips,* the Superior Court commented that *Griggs* "does not employ the proper standards in light of post 1992

developments in products liability law in Pennsylvania." *Id.* at 156 n. 8.

Pennsylvania adopted the Restatement (Second) of Torts Section 402A as the law of strict products liability. *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853, 854 (1966). In *Azzarello v. Black Bros. Co.,* 480 Pa. 547, 391 A.2d 1020, 1026 (1978), the Pennsylvania Supreme Court announced a threshold question of law for the court to decide: whether, as a matter of social policy, the product's condition justifies placing the risk of loss on the manufacturer or supplier. *Id.; See also Surace,* 111 F.3d at 1044. A risk-utility analysis, using the Dean John Wade factors, is appropriate in performing this threshold social policy inquiry. *Surace,* 111 F.3d at 1044–46. If the claim survives this threshold determination, "the jury must determine whether, under the facts, the product, at the time it left the defendant's control, lacked any element necessary to make it safe for its intended use or contained any condition that made it unsafe for use." *Id.* at 1046.

In *Griggs,* 981 F.2d at 1433 & n. 6, the Court of Appeals rejected plaintiff's argument that the risk-utility analysis should be used in this threshold determination. Instead, the Court concluded that Pennsylvania law had adopted an "intended user" test. As noted above, in *Surace,* 111 F.3d at 1046 n. 6, the Court of Appeals stated that *Griggs* had no precedential value as to whether a risk-utility or "intended user" approach should be used in the threshold analysis, because it was inconsistent with the Court's prior opinion in *Motter v. Everest & Jennings, Inc.,* 883 F.2d 1223 (3d Cir.1989). In *Motter,* the Court stated that "[u]nder Pennsylvania law, a trial judge must evaluate the risks of a product versus its social utility in determining whether the issue of the defective product is to be submitted to the jury." 883 F.2d at 1227 (citations omitted).

In *Phillips*, the Superior Court employed the risk-utility analysis, based on the factors identified in the expert report of John O. Geremia, Ph.D., and concluded that summary judgment would not be granted on a products liability claim against manufacturers of disposable lighters without child-resistant features. 773 A.2d 802, 2001 WL 346061. Dr. Geremia has also filed an expert report in this case. "Although decisions by Pennsylvania's intermediate appellate courts are not conclusive in predicting how the state's highest court would decide an issue, they suggest how that court might decide and may constitute presumptive evidence of state law in appropriate circumstances." *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611 (3d Cir.1992).

We conclude that reinstatement of the products liability claim is appropriate. Developments of the law in the Pennsylvania intermediate courts and in the Court of Appeals have clearly indicated that the threshold products liability question should be based on the risk-utility analysis. The Superior Court has applied this analysis in a closely analogous case and we have no reason to believe that the Supreme Court would apply the risk-utility factors any differently. Accordingly, Count III of the Complaint is reinstated.[3] The products liability claim may justify punitive damages. *See Gray v. H.C. Duke & Sons, Inc.*, 387 Pa.Super. 95, 563 A.2d 1201, 1206 (1989). The parties are directed to meet and confer and submit to the court within 20 days an amended case management order, if necessary.

### III Motion to Strike Supplemental Pretrial Statement

▆▆▆ Defendants seek to exclude a supplemental report filed by Carol Pollack-Nelson, Ph. D., plaintiffs' "human factors" expert. Dr. Pollack–Nelson had timely prepared an extensive expert report. Plaintiffs' pretrial statement stated that this was a "preliminary report." The supplemental report merely contains rebuttals to defendants' expert reports, which would have been within the scope of Dr. Pollack–Nelson's original opinions in any event. Accordingly, defendants' motion to strike plaintiff's supplemental pretrial statement will be denied.

### IV Duty to Disclose Adverse Legal Authority to the Tribunal

Defendants' motion for summary judgment has been pending since April 13, 2001. On September 21, 2001, the United States District Court for the Middle District of Pennsylvania issued a thorough opinion in *Hittle v. Scripto–Tokai Corp.*, 2001 WL 1116556 (M.D.Pa.2001). That case is strikingly similar to this one. Not only were the facts (a young child started a fire in the home using defendant's lighter), the governing law, the defendant, and defense counsel identical, it is apparent that Scripto–Tokai made the same legal arguments in pursuit of summary judgment in each case. The *Hittle* court analyzed the same Court of Appeals decisions, predicting the same unsettled areas of Pennsylvania law. The *Hittle* court's decision was clearly adverse to Scripto–Tokai's position on the negligent design claim. Counsel did not bring this case to the court's attention.

Pennsylvania Rule of Professional Conduct 3.3, Candor Toward the Tribunal, states:

> (a) A lawyer shall not knowingly:
>
> . . .

---

3. Plaintiff points to no such developments in the law as to Count II of the complaint (reckless, willful and wanton conduct) and that count will not be reinstated.

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; . . . .

■■■ This Rule is identical to the ABA's Model Rule of Professional Conduct. The Rule serves two purposes. First, courts must rely on counsel to supply the correct legal arguments to prevent erroneous decisions in litigated cases. Geoffrey C. Hazard, Jr. and W. William Hodes, Volume 2, *The Law of Lawyering* § 29.11 (Aspen Law & Business 3d ed.2001). Second, revealing adverse precedent does not damage the lawyer-client relationship because the law does not "belong" to a client, as privileged factual information does. *Id.* Counsel remains free to argue that the case is distinguishable or wrongly decided.

Although there is not much case law interpreting this aspect of the Rule, the ABA issued a formal opinion, *Formal Opinion 280*, dated June 18, 1949.[4] The Formal Opinion addressed the question: "Is it the duty of a lawyer appearing in a pending case to advise the court of decisions adverse to his client's contentions that are known to him and unknown to his adversary?" The ABA opined as follows:

> An attorney should advise the court of decisions adverse to his case which opposing counsel has not raised if the decision is one which the court should clearly consider in deciding the case, if the judge might consider himself misled by the attorney's silence, or if a reasonable judge would consider an attorney who advanced a proposition contrary to the undisclosed opinion lacking in candor and fairness to him.

The ABA explained that this Opinion was not confined to authorities that were decisive of the pending case (i.e., binding precedent), but also applied to any "decision directly adverse to any proposition of law on which the lawyer expressly relies, which would reasonably be considered important by the judge sitting on the case." *Accord In re Greenberg,* 15 N.J. 132, 104 A.2d 46 (1946). "A case of doubt should obviously be resolved in favor of the disclosure." *Formal Opinion 280.* We note that the Pennsylvania Bar Association's *Pennsylvania Ethics Handbook* § 7.3h1 (April 2000 ed.), opines that for a case to be "controlling," the opinion must be written by a court superior to the court hearing the matter, although it otherwise adopts the test set forth in the ABA Formal Opinion.

Because both the Pennsylvania and ABA standards are premised upon what "would reasonably be considered important by the judge," we briefly explain why we prefer the ABA's interpretation. The reason for disclosing binding precedent is obvious: we are required to apply the law as interpreted by higher courts. Although counsel might legitimately argue that he was not required to disclose persuasive precedent such as *Hittle* under Pennsylvania's interpretation of Rule 3.3, informing the court of case law that is directly on-point is also highly desirable. The court considers *Hittle* to be important, because it involved the same facts, issues and law. Knowledge of such opinions may save considerable time and effort in the court's own analysis. Moreover, the court will gain the advantage of evaluating and adopting or refuting the reasoning of a sister court.

4. The full text of Formal Opinion 280 is attached to this memorandum opinion and is also available on Westlaw or LexisNexis.

This can only benefit the adjudicative process. Justice requires that cases be decided correctly and consistently, not that counsel's client wins.

One additional reason to disclose contrary authority is to preserve counsel's credibility. The same standard should apply to disclosure of negative authority as to counsel's supplementation of the record with a favorable case. We think it likely that defense counsel would have brought *Hittle* to the court's attention, and rightly so, had the result of that case been different. In this case, the argument in favor of disclosure was heightened by counsel's unique position to be aware of the adverse authority. *See Massey v. Prince George's County*, 907 F.Supp. 138, 142 (D.Md.1995) (failure to disclose by litigant who was unsuccessful party to directly relevant adverse precedent was "particularly disturbing").

In sum, the court is aware of the limitations on the duty of disclosure as interpreted by the Pennsylvania Bar Association. However, at least as applied to cases such as the one before the court, it would seem that the ABA position is by far the better reasoned one. Certainly, ABA Formal Opinion 280 comports more closely with this judge's expectation of candor to the tribunal.

In accordance with the foregoing, defendants' Motion for Summary Judgment, Doc. No. 50, is DENIED. Plaintiff's Motion to Amend Complaint, Doc. No. 54, is GRANTED in part as to Count III, which is hereby reinstated, and DENIED in part as to Count II. The parties are directed to submit a revised case management order within twenty (20) days of the date of this Order. Defendants' Motion to Strike Plaintiff's Supplemental Pretrial Statement, Doc. No. 67, is DENIED.

## ATTACHMENT 1

### American Bar Association

AN ATTORNEY SHOULD ADVISE THE COURT OF DECISIONS ADVERSE TO HIS CASE WHICH OPPOSING COUNSEL HAS NOT RAISED IF THE DECISION IS ONE WHICH THE COURT SHOULD CLEARLY CONSIDER IN DECIDING THE CASE, IF THE JUDGE MIGHT CONSIDER HIMSELF MISLED BY THE ATTORNEY'S SILENCE, OR IF A REASONABLE JUDGE WOULD CONSIDER AN ATTORNEY WHO ADVANCED A PROPOSITION CONTRARY TO THE UNDISCLOSED OPINION LACKING IN CANDOR AND FAIRNESS TO HIM.

*June 18, 1949*

Copyright (c) 1967 by the American Bar Association

CANONS INTERPRETED: PROFESSIONAL ETHICS 5, 15, 22

A member of the Association has asked the Committee to reconsider and clarify the Committee's Opinion 146.

The Committee's Opinion was stated by MR. DRINKER, Messrs. Brand, Jackson, Jones, Miller, White and Wuerthner concurring.

Opinion 146, rendered July 17, 1935, was in response to a question by a member of the Association as follows:

Is it the duty of a lawyer appearing in a pending case to advise the court of decisions adverse to his client's contentions that are known to him and unknown to his adversary?

The Opinion, stated by Judge Phillips and concurred in by the other members of the Committee, was as follows:

A lawyer is an officer of the court (Ex parte Garland *4 Wall. 333, 378, 18 L.Ed. 366;* People vs. Gorman, *178 N.E. 880,* 346, Ill. 432; Bowles vs. United States [C.C.A. 4] *50 Fed [2d] 848*). His obligation to the public no less significant than his obligation to his client (In Re Bergeron, *220 Mass. 472, 107 N.E. 1007*). His oath binds him to the highest fidelity to the court as well as to his client (In Re Bergeron, supra). It is his duty to aid the court in the due administration of justice (Dodge vs. State, *140 Ind. 284, 39 N.E. 745;* People vs. Gorman, supra; United States vs. Frank, *53 Fed. [2d] 128*).

The conduct of the lawyer before the court and with other lawyers should be characterized by candor and fairness. Canon 22.

We are of the opinion that this Canon requires the lawyer to disclose such decisions to the court. He may, of course, after doing so, challenge the soundness of the decisions or present reasons which he believes would warrant the court in not following them in the pending case.

It will be noted that in the last paragraph the Committee refers to the right of the lawyer to "challenge the soundness of the decisions or present reasons which he believes would warrant the court in not following them in the pending case," but does not refer to his right to "distinguish" them, thus indicating that the Committee had in mind only decisions which were directly adverse.

In the brief summary in the 1947 edition of the Committee's decisions (p. 17), Opinion 146 was thus summarized:

Opinion 146—A lawyer should disclose to the court a decision directly adverse to his client's case that is unknown to his adversary.

The lawyer, though an officer of the court and charged with the duty of "candor and fairness," is not an officer of court.