INFOCOMP, INC., Appellant

v.

ELECTRA PRODUCTS, INC.; Electra Font Technologies, Inc.; Chelgraph Products Limited; Chelgraph Limited; Edward (Ted) Barton; David Lee King; Kevin P. Mahony; Derek J. Kyte; Robert B. Smith.

No. 96–3039.

United States Court of Appeals, Third Circuit.

Argued Oct. 30, 1996.

Filed Dec. 24, 1996.

Vacated March 14, 1997.

Petition for Panel Rehearing Granted Submitted March 14, 1997.

Decided March 28, 1997.

Ronald L. Hicks, Jr., Frederick J. Francis, and Joseph E. Linehan, Meyer, Unkovic & Scott, Pittsburgh, PA, for Appellant.

G. Daniel Carney, Thorp, Reed & Armstrong, Pittsburgh, PA, for Appellees.

Before: SCIRICA and COWEN, Circuit Judges and POLLAK, District Judge*

## OPINION ON PANEL REHEARING

COWEN, Circuit Judge.

This appeal requires us to determine whether a limitation of damages provision, contained in a proposed, but never accepted, written agreement between a purchaser and a distributor, will preclude the purchaser from ·seeking damages against the manufacturer of a product sold to the purchaser by the distributor. We conclude that because the proposed agreement between the distributor and the purchaser was never accepted by the distributor, and, therefore, never went into force, the manufacturer is not protected by the limitation of damages provisions contained in the proposed agreement. We decline to review the jury's finding of liability and partial damages against Chelgraph because Chelgraph filed no cross appeal claiming error in these findings. Accordingly, we will remand for a new trial solely on the issue of any additional damages InfoComp may have suffered by reason of the liability of

---

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Chelgraph for selling a product that the jury found to be defective.

## I.

### A.

Appellant, InfoComp ("InfoComp" or "the purchaser"), seeks damages arising from its purchase of an allegedly defective computer imagesetting system manufactured by Appellee, Chelgraph Ltd. ("Chelgraph" or "the manufacturer"). InfoComp purchased the product from a Chelgraph distributor, Electra Products, Inc. ("Electra" or "the distributor").[1] Chelgraph manufactures various types of advanced printing and compugraphic equipment. Electra was an independent distributor of Chelgraph products. InfoComp provided graphic design and printing services to clients.

InfoComp periodically purchased equipment to enable the company to take advantage of technological advances in its industry. After considerable research, InfoComp's president and owner, Timothy P. Hornish, informed Kevin P. Mahony, national sales manager for Electra, that InfoComp would purchase the Chelgraph IBX–2000 imagesetting system. Thereafter, Mahony faxed InfoComp pre-printed forms and two letters, which set forth prices, payment schedules and delivery terms. Electra's name, address, and logo appeared on the front of the forms, and the first numbered paragraph defined the term "Electra" as referring only to Electra. Nowhere in the forms was Chelgraph mentioned or even identified. The reverse side of the forms contained the following language:

> This Purchase Agreement shall not be deemed accepted by Electra unless and until an authorized officer or manager of Electra has signed the Purchase Agreement. No other act or writing by an agent, officer, or manager of Electra shall cause this Purchase Agreement to be a valid, effective or binding contract on Electra.

App. at 1836. Under the heading "Installation and Service," the following limitation of damages provision was also contained in the forms:

> Electra shall not be liable for any special, incidental, resulting, or consequential damages (whether caused by or resulting from Electra's negligence or breach) directly or indirectly arising from the use, inability to use, attempted use, failure to deliver or delay in delivery of, or from a defect in, or a breach by or failure to conform of the Equipment, or any repair or replacement parts thereof, ordered from Electra for use in conjunction therewith, or from any other cause whatsoever.

*Id.* The forms also contained an integration clause stating that the proposed written agreement constituted the complete understanding between the parties and that no representations or warranties made elsewhere were of any effect. *Id.*

InfoComp signed and returned the forms along with a check for the appropriate down payment in late December of 1989. Electra cashed the check and two other checks sent in accordance with the faxed letters. But Electra apparently failed to meet the requirement of the proposed agreement that one of its authorized officers or managers sign the pre-printed form agreements at its home office in order for the agreement to be considered accepted by Electra.

InfoComp contended that the machinery sold to it by Electra failed to perform in all material respects. Electra made several attempts to repair the equipment after receiving complaints from InfoComp. InfoComp continued to assert that the machine was not satisfactory. In the winter of 1990–91 InfoComp advised both Electra and Chelgraph that it was rejecting the machine and requested a full refund. Both Electra and Chelgraph refused to refund the purchase price. Chelgraph maintained that it was not responsible for InfoComp's numerous problems because of the limitation of damages clause contained in InfoComp's proposed agreement with Electra. In addition, Chel-

---

**1.** Although there are numerous named defendants in this suit, Chelgraph is the sole defendant-appellee in this appeal.

graph maintained that the limitation of damages clause in its own distributor's contract with Electra was enforceable by Chelgraph against InfoComp even though: 1) InfoComp had no knowledge of the Chelgraph–Electra distributor's contract; 2) the Chelgraph–Electra distributor's contract was concluded months after InfoComp signed its agreement with Electra; 3) the proposed InfoComp–Electra agreement made no reference to Chelgraph; and 4) InfoComp had no notice that Chelgraph sought to limit its liability against ultimate purchasers such as Info-Comp.

### B.

The district court denied InfoComp's motion to preclude evidence concerning the exculpatory and limitation of damages provisions contained in the proposed InfoComp–Electra purchase agreements, which were prepared by Electra. InfoComp's motion was based on the principle that the damages provisions—which prohibited recovery for consequential and incidental damages—never came into effect under Pennsylvania law because the agreement expressly stated that it was not to be deemed accepted by Electra unless signed by an official at Electra's home office. The agreement presented to the district court was unsigned, and Chelgraph was unable to prove that the agreement was signed by an official at the home office of Electra.

The district court found that the limitation of damages provision in the proposed agreement between Electra and InfoComp was not only effective but was also binding on Info-Comp in its claims against Chelgraph. Since many of the claims of InfoComp were within the sweep of the limitation of damages provision, the district court granted Chelgraph's motion for judgment as a matter of law on InfoComp's claims of breach of contract, breach of implied warranties, fraud, and misrepresentation. The sole claim on which InfoComp was permitted to go forward against Chelgraph was for breach of the written agreement's 90–day warranty provision against defective material, poor workmanship, and nonconformity with the system's written specifications as to functions and pro-

cesses. On that claim, the jury returned a verdict in favor of InfoComp.

### II.

The district court exercised jurisdiction pursuant to 28 U.S.C. § 1332, diversity of citizenship. We have appellate jurisdiction under 28 U.S.C. § 1291. Our review of the district court's interpretation and application of state law is plenary. *Coleman v. Kaye,* 87 F.3d 1491, 1496 (3d Cir.1996) (citing *Hofkin v. Provident Life & Accident Ins. Co.,* 81 F.3d 365, 369 (3d Cir.1996)). All parties agree that their dispute is governed by Pennsylvania law.

### III.

■ We first address the effect of the InfoComp–Electra purchase agreement. In *Franklin Interiors v. Wall of Fame Management Company,* 510 Pa. 597, 601, 511 A.2d 761, 763 (1986), the parties' agreement stated that "[t]he document does not become a contract until approved by an officer of Franklin Interiors." The Pennsylvania Supreme Court held that this sentence, "inserted in this document by the Appellee, clearly and unambiguously required [the Appellee] to execute the document," and noted that "it is hornbook law" that a written agreement will have no effect "until accepted in the mode and manner expressly provided by the terms of the offer." *Id.* at 600–601, 511 A.2d at 762–763. The court explained that this holds true "even though the subsequent performance by the parties may give rise to a binding contract between them." *Id.* at 600, 511 A.2d at 762.

■ In his multi-volume treatise on the Uniform Commercial Code (UCC), Ronald Anderson explains that "[a] seller can validly specify that no contract arises until the acceptance made by the seller is approved by the seller's home office." 2 Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 2–206:27 (3d ed. 1982) (citing *West Penn Power Co. v. Bethlehem Steel Corp.,* 236 Pa.Super. 413, 348 A.2d 144 (1975)). Such is precisely the fact pattern before us. As *Franklin Interiors* indicates, when an offeror fails to comply with its own

conditions precedent to contract formation, that party may not claim the benefits of the proposed contract (including any limitations on damages and remedies).

This principle, which remains the unchallenged law of Pennsylvania, was first developed in *West Penn Power* and *Franklin Interiors* and later strictly applied in *Cucchi v. Rollins Protective Services Company*, 377 Pa.Super. 9, 546 A.2d 1131 (1988). In *Cucchi*, a lessor was barred from asserting a limitation of liability provision in a contract because that contract had not been signed by a representative of its home office. Although the contract in *Cucchi* had been signed by a branch office representative, the court construed the agreement strictly and found the lack of a *home office* signature to be dispositive. *Id.* at 13, 18–19, 546 A.2d 1131. Here, the proposed contract also recited that a home office signature was essential to contract formation. There is no evidence that *any* Electra employee ever signed the written agreement, let alone an employee at the home office. The law of Pennsylvania firmly establishes that the absence of the required signature is prima facie proof that the contract is not effective:

> The Appellee, through its officers, never entered its signature on the document to evidence approval as required by its terms. This is clearly a facial defect.... [T]here is no evidence in this record to sustain the facially defective contract, and Superior Court clearly erred in considering any information [outside] the record to correct that defect.

*Franklin Interiors*, 510 Pa. at 600–601, 511 A.2d at 762–763.

The court in *Cucchi* explained that "a written instrument must be strictly construed against its maker.... Since the [lessor] had failed to follow its own conditions of acceptance, [it] could not rely on the [limitation of liability provision]." 377 Pa.Super. at 18, 546 A.2d at 1135 (citation omitted). That court noted, as do we, that

> although it ha[s] always been the law that only the party against whom a warrant is intended to bind must sign it because the law assumes assent of the person in whose favor it is drawn, the law [i]s of no avail to

the appellee. No assumption [can] be made that the appellee assented to the warrant because it expressly conditioned acceptance of all the contract terms upon its execution of the document.

*Id.* at 18–19, 546 A.2d at 1136 (citing *Franklin Interiors*). This principle is so firmly embedded in Pennsylvania jurisprudence that the *Cucchi* court stated, "the fact that both parties may have initially believed the written contract to be binding upon themselves did not make it so [because its express terms were not met]." *Id.* at 17, 546 A.2d at 1135.

■ In the matter now before us, because the written agreement was never in effect between Electra and InfoComp, *a fortiori* Chelgraph (a non-party to the proposed agreement) cannot find protection in the limitation of damages provision contained in that proposed agreement. A contract has been formed between InfoComp and Electra in this case by reason of their performance. The terms of that contract, however, are governed by the provisions of the UCC as adopted in Pennsylvania, not the proposed written agreement that was never accepted by Electra. The Pennsylvania Commercial Code (PCC) explicitly provides that incidental and consequential damages are available to purchasers in appropriate cases. 13 Pa. C.S.A. §§ 2714, 2715.

### IV.

■ The contract that exists between the parties arises from the PCC, not the terms of the proposed written agreement. Just as the proposed agreement does not provide Chelgraph and Electra with protection against the measure or amount of damages, the following passage in the written agreement, as well as all other terms, is of no effect:

> This Agreement embodies the full and complete understanding between the parties, and no modification or waiver of any terms or conditions hereof, nor any representations or warranties shall be of any force or effect unless in writing and signed by an authorized officer or manager of Electra.

App. at 1836. Erroneously believing the proposed written agreement to be in effect, the district court instructed the jury that

> you may only look to the written purchase agreement to determine whether a warranty existed, whether the Chelgraph defendants breached the warranty, and whether the breach of warranty was a substantial factor in causing the harm to the plaintiff.

App. at 1642. The district court explained to jurors that although InfoComp allegedly received "certain oral representations [and] representations in written advertisements, promotional materials, and samples issued by Electra and Chelgraph that the IBX–2000 had certain characteristics," the jury could not consider any of the evidence external to the agreement in assessing liability. *Id.*

■ Since the proposed written agreement is not in force, the jury should have been advised that it was free to consider all representations that were made to InfoComp by Electra and Chelgraph, not merely those contained in the written agreement. While the proposed written agreement may be evidence of the parties' intent and actions, it never went into effect as a binding contract. Nonetheless, despite the error of the district court's charge to the jury that liability should be determined under the terms of the written agreement, we find that the judgment for InfoComp should stand, for the reasons stated below.

Chelgraph has not appealed the judgment against it; it has appealed for a new trial solely on the issue of damages. In addition to not filing a cross appeal, Chelgraph never even argued, either in its brief or at oral argument, any error with respect to the jury's liability verdict or the district court's final judgment. Nor did Chelgraph object to InfoComp's position that a remand in the matter should be limited solely to InfoComp's claim for incidental and consequential damages. Moreover, at the damages phase of the trial Chelgraph stipulated that, at a minimum, InfoComp was entitled to $79,745 in basic warranty damages under the PCC section recorded at 13 Pa.C.S.A. § 2714(b).

At trial the district court granted Chelgraph's request that the liability and damages aspects of InfoComp's claims be bifurcated. The jury therefore did not know which damages were available to InfoComp when, on November 13, 1995, it reached its conclusions as to liability. Accordingly, we need not be concerned that misunderstandings as to the full scope of available damages tainted the jury's finding of *liability*. The jury found Chelgraph to have been liable under the narrow terms of the written agreement's 90–day "free from defect" warranty. We conclude that necessarily the jury also found that Chelgraph breached the PCC's much broader implied warranty of merchantability, which the district court improperly excluded. *See Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3rd Cir. 1992) (explaining that a breach of the implied warranty of merchantability will be found when purchased equipment is shown to be "defective"). *See also* 13 Pa.C.S.A. §§ 2314, 2315. We do not lightly reach the conclusion that the jury's finding of a breach of the express 90–day warranty necessarily includes a breach of the implied warranty of merchantability. We do so only after a careful and particularized review of the record and trial transcript. The district court explained to the jury:

> [P]laintiff contends that defendant made an express warranty in the purchase agreement that in pertinent part promised that for a period of ninety days from the date of delivery or installation, the IBX 2000 system *would not contain defective material or poor workmanship and the system had the capacity to perform the functions and could process the material in conformity with the written specifications published by Electra*. . . . . The three questions you must decide . . . are one, whether a warranty existed in the written purchase agreement . . . ; two, whether the defendant breached that warranty; and three, whether the breach of warranty was a substantial factor causing harm to the plaintiff. . . . . If you find in favor of plaintiff on all the questions, you will return a verdict for the plaintiff. If you do not find in favor of plaintiff on all three questions, you will return a verdict for the defendant. . . . . [Y]our verdict must be

unanimous. .... Now, remember I told you at the beginning of the trial that your only task at this point is to decide liability. You will not be asked to decide whether or not damages should be assessed at this time in the event you should find liability in favor of plaintiff against defendant.

App. at 1643–46 (emphasis added). Under Pennsylvania law, the implied warranty of merchantability is breached when **any** of the following merchantability standards for goods is not met:

Goods to be merchantable must be at least such as:

(1) **pass without objection in the trade under the contract description;**

(2) in the case of fungible goods, are of fair average quality within the description;

(3) **are fit for the ordinary purposes for which such goods are used;**

(4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;

(5) are adequately contained, packaged, and labeled as the agreement may require; and

(6) conform to the promises or affirmations of fact made on the container or label, if any.

13 Pa.C.S.A. § 2314(b) (emphasis added).

In reaching its verdict, the jury found that the following express warranty was not met:

Electra expressly warrants that for a period of 90 days ... (i) the Equipment will not contain defective material or poor workmanship; and (ii) the Equipment has the capacity to perform the functions and to process the material in conformity with the written specifications published by Electra and accompanying delivery of the Equipment....

The jury therefore necessarily found the delivered product to have been unmerchantable and defective as a matter of Pennsylvania law.

Although the district court was in error when it instructed the jury that the liability of Chelgraph should be determined under the written contract, we find that error to have been harmless insofar as the jury's finding that Chelgraph was liable for selling a defective product. For this reason, and in the interests of judicial economy, we will remand this case solely on the issue of any additional damages that InfoComp may be entitled to by reason of its purchase of a defective product.

## V.

Chelgraph has argued that the proposed InfoComp–Electra limitation of damages provisions should inure to the benefit of Chelgraph. In *King v. Hilton–Davis,* 855 F.2d 1047, 1053 (3d Cir.1988), we explained that under Pennsylvania law the liability of manufacturers will not be waived by remote purchasers unless the disclaimer is "clearly communicated to the remote [purchaser] prior to his or her purchase." Communication of the limitation clause from the manufacturer to the remote purchaser is vital; without more, a limitation clause addressing only the distributor and the purchaser has no effect on the manufacturer. *See id. King* offers two examples of methods manufacturers may employ to notify remote purchasers of their desire to limit liability: (1) displaying a conspicuous provision in the literature included with the product, and (2) contracting with the distributor to expressly reference manufacturer's limitation of liability in the distributor's contracts with its customers. *Id.* at 1054 (citations omitted). *King* is the most recent statement of Pennsylvania law in this area, and Chelgraph failed to employ any method to satisfy *King*'s holding that remote purchasers must be specifically notified of a manufacturer's intent to limit damages if that limitation is to be effective.

The facts of the present case represent an *a fortiori* matter from *King:* Even if Chelgraph had endeavored to limit its liability by or through the proposed agreement between Electra and InfoComp, that written contract never came into existence. The proposed written agreement was never accepted according to its own explicit terms. As a result, the sale that went forward between Electra and InfoComp was the subject of an unwritten agreement subject to the full range of provisions contained in the PCC.

## VI.

For the reasons set forth above, the judgment of December 21, 1995, will be vacated to the extent that it denied InfoComp the right to claim and prove incidental, consequential, and other damages provided for under the PCC. That portion of the judgment that resulted in a liability verdict against Chelgraph and partial damages is not reviewed, since no cross appeal was filed claiming error in these determinations. We will remand this matter to the district court for a retrial on damages consistent with this opinion. Such trial shall be without limitation of damages by reason of the proposed written agreement between Electra and Info-Comp. Costs taxed against Appellee.