Shirley HITTLE and John Hittle, Individually and as Administrator of the Estate of Jessica Hittle, Deceased, Plaintiffs,

v.

SCRIPTO–TOKAI CORPORATION; Tokai Corporation; and JMP Mexico, S.A. de C.V., Defendants.

No. 4:CV–99–0736.

United States District Court, M.D. Pennsylvania.

Sept. 21, 2001.

As Corrected Oct. 4, 2001.

D. Bruce Kehoe, Indianapolis, IN, John M. Humphrey, Rieders Travis Humphrey Harris Waters & Waffenschmidt, Williamsport, PA, for plaintiffs.

Carl A. Eck, Paul R. Robinson, Meyer, Darragh, Buckler BeBenik, Eck & Hall, Pittsburgh, PA, for defendants.

### MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On May 6, 1999, plaintiffs Shirley and John Hittle (the Hittles) commenced this action with the filing of a complaint, alleging that a fire in their home was caused by a household lighter manufactured and distributed by defendants Scripto–Tokai Corporation, Tokai Corporation, and JMP Mexico, S.A. de C.V (collectively, "Tokai") and marketed under the brand name "Aim 'N Flame." John Hittle is the administrator of the estate of Jessica Hittle, who was fatally injured in the fire. The complaint advances legal theories of strict products liability, negligent design, negligent failure to warn, breach of warranty, and misrepresentation. On December 6, 1999, we dismissed the strict liability claims on the grounds that Jacob Hittle, the four-year-old child who lit the flame which caused the fire, was not an "intended user" of the lighter. Before the court is Tokai's motion for summary judgment, which will be granted in part and denied in part.

### DISCUSSION:

### I. ROLE OF A FEDERAL COURT

A federal court sitting in diversity must apply state substantive law and federal procedural law. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir.2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). In this case, it is undisputed that Pennsylvania law applies. In the absence of a reported decision by the state's highest court addressing the precise issue before it, a federal court applying state substantive law must predict how the state's highest court would rule if presented with the case. *See Nationwide Mutual Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir.2000) (citation omitted). A federal court may give due regard, but not conclusive effect, to the decisional law of lower state courts. *Id.* (citation omitted). "The opinions of intermediate appellate state courts are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (quoting *West v.*

*AT & T Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)). "In predicting how the highest court of the state would resolve the issue, [a federal court] must consider 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *Id.* (quoting *McKenna v. Ortho Pharm. Corp.,* 622 F.2d 657, 663 (3d Cir. 1980)).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Summary judgment is appropriate only when the record could not lead a reasonable jury to find for the non-moving party." *Crissman v. Dover Downs Entertainment, Inc.,* 239 F.3d 357, 360–61 (3d Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

■ The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. It can discharge that burden by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

■ "An issue [of fact] is 'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Surace v. Caterpillar, Inc.,* 111 F.3d 1039, 1043 (3d Cir.1997) (quoting *Childers v. Joseph,* 842 F.2d 689, 693–94 (3d Cir.1988)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The court may not weigh the evidence or make credibility determinations. *Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir.1998) (citations omitted). "When a court is deciding a motion for summary judgment, 'inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true.'" *Carter v. Exxon Co. USA,* 177 F.3d 197, 202 (3d Cir.1999) (quoting *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992)).

■ Once the moving party points to evidence demonstrating that no issue of material fact exists, the non-moving party

has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor. *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "Speculation and conclusory allegations do not satisfy this duty." *Ridgewood*, 172 F.3d at 252 (citing *Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995)). That is, "[o]nce the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor ." *Ridgewood*, 172 F.3d at 252 (citations omitted). To that effect, "a nonmoving party ... cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit [as to a material fact]." *Schoonejongen v. Curtiss–Wright Corporation*, 143 F.3d 120, 130 (3d Cir.1998) (citations omitted).

### III. STATEMENT OF ISSUES

The Hittles' claims focus primarily on the deficient design of the Aim 'N Flame. Tokai responds largely by arguing that many of the Hittles' claims are barred as a matter of law. We must decide:

(1) whether the Hittles' state tort claims are preempted by the Consumer Products Safety Act, 15 U.S.C. § 2051 et seq., and its accompanying regulations;

(2) whether the Hittles' negligence claims may survive in the absence of a viable claim of strict products liability;

(3) whether, if the negligence claims survive, the Hittles have produced enough evidence to survive summary judgment on the claims of negligent design and/or negligent failure to warn;

(4) whether a jury could find that Tokai breached any implied or express warranties of merchantability;

(5) whether there is sufficient evidence that Tokai made any misrepresentations with regard to the Aim 'N Flame; and

(6) whether, assuming the Hittles' victory at trial, punitive damages would be appropriate.

### IV. STATEMENT OF FACTS

On May 1, 1998, the Hittles purchased two butane multipurpose utility lighters marketed and sold under the brand name "Aim 'N Flame" from a Wal–Mart store located in Bloomsburg, Pennsylvania. At the time of the purchase, the lighters' packaging contained a warning to "KEEP AND STORE AWAY FROM CHILDREN." The packaging also contained reference to an "on/off" switch, which could be seen through the packaging.

Upon returning to their home following the purchase of the lighters, John either placed the lighters on a recliner in the living room or placed one lighter in the top drawer and one on the kitchen table. That evening, Jacob obtained possession of one of the lighters and a candle. He entered the Hittles' bathroom with both of the objects in hand, asking if they could light the candle. John took the lighter from Jacob, put the lighter in its "off" position, and tested the lighter by squeezing the trigger. When no flame came out, he put the lighter on a shelf behind the kitchen sink.

On May 3, 1998, John left for work at 4:30 AM. Shirley woke up at 1:00 PM and after finding that both Jessica and Jacob were asleep, she stepped into the shower. While Shirley was in the shower, Jacob obtained possession of the lighter and used

the lighter to start a fire, which killed Jessica and severely injured Shirley.

## V. PREEMPTION

■ Tokai contends that all of the Hittles' state tort claims are preempted by federal regulations enacted by the Consumer Product Safety Commission (Commission) pursuant to the Consumer Products Safety Act (the Act). The Act provides:

> Whenever a consumer product safety standard under this chapter is in effect and applies to a risk of injury associated with a consumer product, no State or political subdivision of a State shall have any authority either to establish or to continue in effect any provision of a safety standard or regulation which prescribes any requirements as to the performance, composition, contents, design, finish, construction, packaging, or labeling of such product which are designed to deal with the same risk of injury associated with such consumer product, unless such requirements are identical to the requirements of the Federal standard.

15 U.S.C. § 2075(a). The terms of the Act provide that if a federal safety standard is in effect and applies to a risk of injury associated with a product, no state may honor any safety standard or regulation associated with that product unless the standard is identical to the federal standard. The federal safety standard which Tokai contends applies to the Aim 'N Flame may be found in 16 C.F.R. § 1212. These regulations set forth safety standards for multi-purpose lighters such as

the one in the instant case. It is unnecessary to analyze the substance of the regulations, however, because it is undisputed that the standard enacted in § 1212 did not apply to the subject lighter. The Act states that "[a] consumer product safety standard shall be applicable only to consumer products manufactured after the effective date [of the standard]." 15 U.S.C. § 2058(g)(1). The standard promulgated in § 1212 "applies to all multi-purpose lighters, as defined in § 1212.2, that are manufactured in the United States, or imported, on or after December 22, 2000." 16 C.F.R. § 1212.1. The Hittles' injuries were sustained on May 1, 1998; obviously, § 1212 did not apply on the day of the accident. *See Phillips v. Cricket Lighters*, 773 A.2d 802, 807–808 (Pa.Super.2001) (rejecting a similar argument that a state tort action was preempted under the Act where, *inter alia*, the federal safety standard was not effective until after the plaintiffs suffered their injuries).[1]

## VI. NEGLIGENT DESIGN

As stated above, we dismissed the Hittles' strict liability claims because Jacob was not an intended user of the Aim 'N Flame. Tokai now contends that because there is no evidence that the lighter was *defective* under strict liability principles, then there necessarily can be no claim of negligence. In making this argument, Tokai relies on the Pennsylvania Superior Court case of *Dambacher v. Mallis*, 336 Pa.Super. 22, 485 A.2d 408 (1984), which stated that "in a negligence case the plaintiff must prove, not only that the product was defective and that the defect caused his injury, but in addition, that in manufac-

---

1. In subsequent submissions to the court, Tokai admits that the safety standard enacted in § 1212 did not apply to the subject lighter because the subject lighter was purchased on May 1, 1998, before § . (*See* Brief In Support of Motion In Limine to Exclude Evidence and

Argument that the Defendants Are Liable Because of the Absence of a Child–Resistant Feature on the Subject Aim 'N Flame, Rec. Doc, No. 151, at 3, 6; *see also* Rec.Doc. No. 203 at 12.)

turing or supplying the product the defendant failed to exercise due care." *Id.* at 424 (citations omitted). Tokai's assertion is that the very reason we dismissed the strict liability claims—that the lighter was safe for intended users—should apply with equal force to the granting of summary judgment on the negligence claim, as the existence of a negligence claim depends on the existence of a defective product. Tokai cites a number of Pennsylvania cases which follow the rule set forth in *Dambacher.* It points to *Fitzpatrick v. Madonna,* 424 Pa.Super. 473, 623 A.2d 322, 326 (1993) (dismissing negligence claims regarding a motorboat because boat was found not to be defective under strict liability principles), and *O'Neill v. Checker Motors Corp.,* 389 Pa.Super. 430, 567 A.2d 680, 683 (1989) (affirming the granting of summary judgment on a negligence claim regarding a taxicab because there was no evidence of a defect in the cab).

Tokai virtually ignores the binding Third Circuit case that addresses this very issue. The issue of the viability of the Hittles' negligence claims is controlled by *Griggs v. BIC Corp.,* 981 F.2d 1429 (3d Cir.1992). In *Griggs,* an 11–month–old child sustained serious injuries in a fire started by his three-year-old stepbrother, who obtained possession of a disposable butane cigarette lighter manufactured by BIC. The court held that BIC could not be held liable in strict liability under the facts of the case because the child who used the lighter was not an "intended user" of the product. *Id.* at 1434. While clinging to its holding that the defendant was not strictly liable, the court proceeded to ascertain "whether under Pennsylvania law the absence of a 'duty' to the unintended user in strict liability also is determinative of the absence of duty in negligence." *Id.* at 1435. The discussion pertained, *inter alia,* to "the Pennsylvania Supreme Court's attempts to maintain strict liability

and negligence as two independent grounds for a personal injury claim." *Id.* The court examined prior Pennsylvania cases which imprecisely used the term "duty" when commenting on the court's initial determination of defect in strict liability. The court noted that the two analyses differ in that while the initial social policy determination of dangerousness under a theory of strict liability does not incorporate the concept of foreseeability, the analysis of "duty" under negligence law does. *Id.* Finding that the absence of a "duty" (as courts have incorrectly named it) under strict liability does not necessarily foreclose a duty under negligence principles, the court stated:

> Because foreseeability is an integral part of the duty analysis in negligence, and because the "duty" analysis in strict liability eschews foreseeability as an element, holding "no duty" in strict liability does not *per se* eliminate consideration of the duty factor in negligence law. We believe, therefore, based on its precedent that strives to maintain the difference between negligence and strict liability law, that the Pennsylvania Supreme Court would reject the proposition that the social policy determination as to product defect in strict liability is the equivalent of a determination of duty in negligence law.

*Id.* The *Griggs* court rejected the same argument that Tokai advances in this case, i.e., that *Dambacher* stands for the principle that a product defect is an element of a negligence claim. The *Griggs* panel, in rebuffing BIC's argument, made sure to discredit *Dambacher:*

> We first note that it is just as unfortunate that courts deciding a negligence claim do so in strict liability language as it is that courts deciding a strict liability claim use the language of negligence. The conclusion in strict liability that a

product is defective results from the same analysis that produced the conclusion that BIC had "no duty" to child-proof the lighter. This analysis does not take into account factors that must be examined in negligence.

*Id.* at 1439. The court then stated that

It is reasonable . . . to predict that the [Pennsylvania Supreme Court] would reject the *Dambacher* elements in favor of the standard negligence formulation under Pennsylvania law because (1) the *Dambacher* formulation does not maintain the separation of concepts and vocabulary in strict liability and negligence analyses that the supreme court strives for, and more importantly, (2) it reflects a misunderstanding of the theoretical underpinnings of each claim."

*Id.* *Griggs*, then, is clear that, contrary to Tokai's assertions, "proof of negligence may be possible without a finding of strict liability." *Id.*

The Third Circuit placed *Griggs* somewhat under fire in *Surace v. Caterpillar, Inc.*, 111 F.3d 1039 (3d Cir.1997). Any criticism by *Surace* of the *Griggs* holding, though, was limited to scrutinizing *Griggs'* discussion of whether to use a risk-utility or an "intended use" approach in finding a product "unreasonably dangerous" in strict liability, an issue which is not relevant to Tokai's motion. *See Surace*, 111 F.3d at 1046 n. 6. It is worth noting that this court has held that notwithstanding *Surace's* criticism of *Griggs*, the two cases are not irreconcilable. *Shouey v. Duck Head Apparel Co., Inc.*, 49 F.Supp .2d 413, 429 (M.D.Pa.1999). In any event, *Griggs* is still good law as it relates to the existence of a negligence claim absent liability under strict liability principles. This court recognized this fact in *Shouey*, where, while citing the aforementioned holding of *Griggs*, we allowed a negligence claim to proceed after granting summary judgment on a strict liability claim regarding the same product, a flammable shirt. *Id.* at 430; *see also Klemka v. Dillon Companies, Inc.*, No. CIV. A. 95–CV–4548, 1996 WL 571753, at *3 (E.D.Pa. October 4, 1996); *Riley v. Warren Manufacturing*, 455 Pa.Super. 384, 688 A.2d 221, 228 n. 10 (1997) (stating that "[t]he distinction in Pennsylvania between products liability and negligence was aptly explained in *Griggs* . . .").[2]

Tokai attempts to sway the court away from *Griggs* by stating, *inter alia*, that "[i]t should be noted that the issue of whether a negligence claim can survive in the absence of evidence of a defect was

---

**2.** Tokai also cites the recent Third Circuit case of *Oddi v. Ford Motor Co.*, 234 F.3d 136 (3d Cir.2000). The *Oddi* court was faced a claim of negligence regarding a truck. Citing the *Dambacher* rule, the court noted that in order to sustain his negligence claim, the plaintiff was required to first establish that the vehicle was defective. *Id.* at 144. The panel then affirmed the district court's granting of summary judgment on the negligence claim, but its reasons for the affirmance stemmed from the affirmance of the district court's exclusion of certain expert testimony. *Id.* at 159. The court ruled that absent the expert testimony, the negligence claim could not survive. *Id.* To the extent that *Oddi* holds that the *Dambacher* analysis is appropriate, we refuse to give it any precedential value insofar as it relates to the instant case, as it is contrary to *Griggs*. The Third Circuit recently stated that "[a] panel of [the Third Circuit] cannot overrule a prior panel precedent. . . . To the extent that [the later case] is inconsistent with [the earlier case, the later case] must be deemed without effect." *Surace*, 111 F.3d at 1046 n. 6 (citations and internal quotation marks omitted). The panel in *Oddi*, then, cannot overrule *Griggs'* directive to reject the *Dambacher* analysis and keep the issue of the existence of a "defect" separate from a negligence analysis. While *Oddi* may be valuable in the context of the analysis of expert testimony under the Federal Rules of Evidence, *see, e.g., Hamilton v. Emerson Electric Co.*, 133 F.Supp.2d 360, 371 (M.D.Pa. 2001), it has no force here.

never raised or decided in *Griggs* [.]" (Defendants' Brief at 8.) As demonstrated by the above discussion, this is simply untrue. In addition, Tokai cites *Riley* for the proposition that "the negligence of the supplier of an adult product cannot be evaluated by reference to unintended users of the product such as children." This is another erroneous contention, as *Riley* was strictly a strict liability case which relied heavily on *Griggs,* and even commented in a footnote that *Griggs* held that the lighter manufacturer, who could not be held liable in strict products liability, may have had a duty under a negligence theory to manufacture childproof lighters in certain circumstances. *Riley,* 688 A.2d at 228 n. 11.

▆▆▆ Now that we have settled that a negligence claim may stand even in the absence of a "defect" under strict liability principles, we must determine whether the Hittles' negligence claim may survive summary judgment on its own merits. Our main focus will be on to what extent Tokai owed the Hittles a duty of care.

▆▆▆ "Whether a defendant owes a duty of care to a plaintiff is a question of law." *Kleinknecht v. Gettysburg College,* 989 F.2d 1360, 1366 (3d Cir.1993) (citations omitted). The duty analysis is twofold. First, the court determines whether the defendant could have foreseen the likelihood of harm to the plaintiff as a result of the defendant's act. *Id.* at 1369 (citing *Griggs,* 981 F.2d at 1435). If the risk of harm was foreseeable, then the court determines whether the risk was also unreasonable. *Id.* (citing *Griggs,* 981 F.2d at 1435). The court imposes a duty on the defendant if it answers both inquiries in the affirmative, but if the court finds that the risk was either unforeseeable or unreasonable, or both, then no duty is imposed. *See id.*

▆▆▆ First, we address the foreseeability of injury to the Hittles. "The type of foreseeability that determines a duty of care ... is not dependent on the foreseeability of a specific event." *Kleinknecht,* 989 F.2d at 1369 (citation omitted). "Instead, in the context of duty, [t]he concept of foreseeability means the likelihood of the occurrence of a general type of risk rather than the likelihood of the occurrence of the precise chain of events leading to the injury." *Id.* (citations omitted). The *Kleinknecht* court gave guidance as to the parameters of the particular risk:

> Only when even the general likelihood of some broadly definable class of events, of which the particular event that caused the plaintiff's injury is a subclass, is unforeseeable can a court hold as a matter of law that the defendant did not have a duty to the plaintiff to guard against that broad general class of risks within which the particular harm the plaintiff suffered befell.

*Id.* (citations omitted).

The *Griggs* court, analyzing the duty of a lighter manufacturer in the context of facts similar to those of the instant case, defined the risk to be contemplated as that in which lighters "fall into the hands of children, who, albeit unintended users, can ignite them with a probability of serious injury to themselves and others." *Griggs,* 981 F.2d at 1439. We will do the same, noting that a duty may exist even if Jacob's specific actions on the day of his sister's death were unforeseeable to Tokai. *See Kleinknecht,* 989 F.2d at 1370 (finding that a college could have foreseen the risk of a life-threatening injury to a student-athlete even if the particular injury suffered by the athlete was unforeseeable).

The defendant in *Griggs* conceded that the risk to the Griggses was foreseeable. In the instant case, Tokai admits that "[i]njuries by unsupervised young children

coming into possession of adult products may be foreseeable." (Defendants' Brief, Rec.Doc. No. 96, at 11.) Tokai then argues that no duty should be imposed because Jacob was not an intended user of the lighter. As we stated above, the concept of the "intended user" is irrelevant in the negligence realm. To the extent that Tokai does not concede foreseeability for the purposes of negligence, the Hittles point us to abundant empirical data demonstrating that Tokai could have foreseen the risk of an unsupervised child causing injury by using a lighter. In an Advance Notice of Proposed Rulemaking published in the Federal Register, 53 FR 6833 (1988), the Commission estimated that "during the years 1980 through 1985, on average 120 persons have died and 750 persons have been injured each year in fires started by children playing with lighters." *Id.* at 6836. Certainly, Tokai should have foreseen the risk of an injury caused by a child obtaining and playing with a lighter.

Now that we have determined that the risk of injuries such as Hittles' was foreseeable, "a finding of duty in negligence would turn on the last piece of the traditional duty puzzle: whether the foreseeable risks were unreasonable." *Griggs,* 981 F.2d at 1435. "The classic model for analyzing this aspect of negligence law is the risk-utility form of analysis, which balances 'the risk, in the light of the social value of the interest threatened, and the probability and extent of the harm, against the value of the interest which the actor is seeking to protect, and the expedience of the course pursued.' " *Griggs,* 981 F.2d at 1435–36 (citations omitted). "As the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less to generate a duty of precaution." *Id.* at 1436 (citation omitted).

We need only mimic the risk-utility analysis of the *Griggs* court to determine that the foreseeable risk of the Hittles' injuries was also unreasonable. The *Griggs* court examined the identical Advance Notice of Proposed Rulemaking, which states that in addition to the large number of deaths and injuries caused by children playing with lighters, "[t]he annual cost of childplay lighter fires [is] $300–375 million or 60–75 cents per lighter sold." 53 FR at 6836. First analyzing the risk of harm to the Griggses, the court found that "the gravity of the possible harm, in terms of both personal injury and property damage by childplay fires, is appreciable, recurring, and serious," and that "[t]he social value of the safety to be secured is indisputably high." *Griggs,* 981 F.2d at 1436.

The court then turned its attention to the utility of BIC's failure to childproof the lighter. It stated that "[t]he factors to be considered when analyzing the utility of the conduct in question ... must be balanced against the probability and gravity of the harm. They are: (1) the social value of the interest which the actor is seeking to advance; and (2) any alternative course open to the actor." *Id.* (citations omitted). Based on the Commission's report, the court found that "[t]he only interest BIC can be seeking to advance by not childproofing its lighter is one of cost and its own economic health." *Id.* In *Griggs,* BIC conceded the feasibility of childproofing the lighter. The court concluded that the utility of producing a lighter lacking a childproof design was greatly outweighed by other factors:

> On balance, the high social value placed on the safety of people and property threatened by childplay fires, the high gravity of risk, the considerable probability of risk, and the likelihood of a reasonably available alternative may outweigh BIC's interest in producing its lighters without childproofing features.

In such circumstances, the risk of omission would be unreasonable.

*Id.* at 1437. Tokai does not meaningfully assert that it would not have been economically feasible to design its lighters with childproof characteristics. The risk-utility determination by the *Griggs* court, then, leads us to conclude that in the instant case, the risk of the Hittles' injuries, and any failure by Tokai to properly guard against the risk, was unreasonable. Even if *Griggs* were not controlling, we would find the risk of injury to the Hittles to be unreasonable for essentially the same reasons.

■■■■ The *Griggs* court synthesized its analysis into an all-inclusive holding:

Thus, we predict that the Supreme Court of Pennsylvania would hold that if a manufacturer of cigarette lighters may reasonably foresee that they will fall into the hands of children, who, albeit unintended users, can ignite them with a probability of serious injury to themselves and others, and if childproofing the lighters is economically feasible, the manufacturer would have a duty to guard against the unreasonable risk of harm by designing the lighter to be childproof.

*Id.* at 1439. Since the facts and circumstances of this case do not differ significantly from those of *Griggs*,[3] we are bound by *Griggs's* holding and find that because the risk of harm to the Hittles was both foreseeable and unreasonable, Tokai had a duty to design the Aim 'N Flame to be childproof.[4] Whether Tokai breached that duty is a question of fact for the jury. *Kleinknecht*, 989 F.2d at 1371 (citations omitted). The question of causation, which under Pennsylvania law includes "but for" causation and proximate or legal cause, is also one of fact for the jury. *Griggs*, 981 F.2d at 1439 (citations omitted); *Kleinknecht*, 989 F.2d at 1371 (citations omitted).[5] The negligent design claim stands.

## VII. NEGLIGENT FAILURE TO WARN

■■■■ The Hittles next contend that Tokai failed to warn them properly of the consequences of the lighter's falling into the hands of an unsupervised child. In *Overbeck v. Cates*, 700 A.2d 970 (Pa.Super.1997), the Pennsylvania Superior Court held that a person who supplies a chattel to another may be liable under a negligence theory for physical harm caused by the use of the chattel if the supplier (1) knows or has reason to know

---

**3.** That the lighter in *Griggs* was a *cigarette* lighter while the subject lighter was a *utility* lighter does not cause *Griggs* to be distinguishable from the instant case with respect to the issue of the imposition of a duty of care. While Tokai in any event does not sufficiently argue this point, we find that the considerations regarding the assignment of a duty, particularly the issue of foreseeability of harm, are identical whether the lighter in question is a cigarette lighter or a utility lighter. In accordance with this view was the District of Colorado in *Bartholic v. Scripto–Tokai Corp.*, 140 F.Supp.2d 1098, 1116 (D.Colo.2000). The *Bartholic* court, in assigning a duty to one of the instant defendants to make the Aim 'N Flame child-resistant, cited *Griggs* for the foreseeability of childplay fires.

**4.** Tokai's only reference to *Griggs* is a footnote in its brief which states, "[*Griggs*] must be revisited," and cites *Pacheco v. Coats Co., Inc.*, 26 F.3d 418 (3d Cir.1994). *Pacheco* actually supports *Griggs* for the purposes of this case by citing it for the proposition that foreseeability has no place in a strict liability analysis. *Id.* at 422 (citing *Griggs*, 981 F.2d at 1435). Tokai also cites a large number of cases from other jurisdictions, none of which, regardless of its content, can challenge the Third Circuit's clear roadmap set forth in *Griggs*.

**5.** To be sure, the Hittles, through their deposition testimony, have presented sufficient evidence of both breach and causation.

that the chattel is in a dangerous condition; (2) has no reason to believe that those for whose use the chattel is supplied will realize the dangerous condition; and (3) fails to warn those for whose use the chattel is supplied of the dangerous condition. *Id.* at 972 (quoting Restatement (Second) of Torts, § 388). Many failure-to-warn claims arise under the theory of strict products liability, but the principles of a strict liability failure-to-warn claim are applicable to a failure-to-warn claim under a theory of negligence. *See Shouey*, 49 F.Supp.2d at 420 n. 3 (citing *Baldino v. Castagna*, 505 Pa. 239, 478 A.2d 807 (1984)). " 'A warning of inherent dangers is sufficient if it adequately notifies the intended user of the unobvious dangers inherent in the product.' " *J. Meade Williamson and F.D.I.B., Inc. v. Piper Aircraft Corp.*, 968 F.2d 380, 387 (3d Cir.1992) (quoting *Mackowick v. Westinghouse Electric Corp.*, 525 Pa. 52, 575 A.2d 100, 102 (1990)). A manufacturer has no duty to warn of obvious risks. *See Metzgar v. Playskool, Inc.*, 30 F.3d 459, 460, 465–66 (3d Cir.1994) (citations omitted). "[W]here a warning is given, the seller may reasonably assume that it will be read and heeded." *Pavlik v. Lane Limited/Tobacco Exporters International*, 135 F.3d 876, 883 (3d Cir.1998) (citation omitted).

Our analysis of the Hittles' negligent failure-to-warn claim is guided by *Phillips*, the recent Pennsylvania Superior Court case featuring an accident comparable to the one in the instant case. The lighter in *Phillips* included the following warning:

**WARNING: KEEP AWAY FROM CHILDREN**

*Phillips v. Cricket Lighters*, No.1995–4217 at 26 (Pa.Cmwlth. November 30, 1998). In granting summary judgment to Cricket, the Common Pleas Court did not address the adequacy of the warning, but rather reasoned that because lighters have an inherently dangerous quality, and because the risk of children starting fires was open and obvious, the manufacturer had no duty *at all* to warn of the risks associated with the plaintiffs' injuries. The court noted that the sole survivor of the fire, a young boy, testified that his mother demonstrated her knowledge of the risks by instructing her children not to play with or attempt to use the lighter. *Id.* The Superior Court affirmed the trial court's granting of summary judgment on the failure-to-warn claim. *Phillips*, 773 A.2d at 816.

The facts of the instant case are similar to those of *Phillips*, and invite the same result. We note that although *Phillips* was a strict liability case, "the standard of obviousness is the same in strict liability and in negligence. . . ." *Metzgar*, 30 F.3d at 465. Both Shirley and John Hittle were aware of the risks inherent in a child's using the lighter. (*See* Shirley Hittle Dep., Defendants' Exhibit 2, Rec. Doc. No. 98, at 31; John Hittle Dep., Defendants' Exhibit 1, Rec .Doc. No. 98, at 54.) Because the danger of a child starting a fire was open and obvious, Tokai had no duty to warn, and is entitled to summary judgment on this claim.[67]

---

6. *Phillips* was decided under a theory of strict products liability, while the instant claim advances a theory of negligence. The Third Circuit has stated that under a theory of negligence, "the question of obviousness [of a risk] is more properly submitted to a jury than disposed [of] on a motion for summary judgment." *Metzgar*, 30 F.3d at 466. We believe, however, that no reasonable jury could conclude that a risk of injury due to the operation

of a lighter by children is not open and obvious. Our disposition of this issue is supported by *Metzgar*, which, notwithstanding the above-mentioned language, suggests that obviousness is a question of law if the court determines that no reasonable jury could conclude that a danger was not obvious. *Id.*

7. The *Phillips* panel stated that it affirmed the trial court's granting of summary judgment

Even if the danger were not open and obvious, Tokai would be entitled to summary judgment because ·its warning to keep the lighter away from children was adequate as a matter of law. The warning on the packaging cautioned the purchaser to "KEEP AND STORE AWAY FROM CHILDREN." The Hittles argue that the warning was ineffective in that it while it warned to keep the lighter away from children, it did not address the danger that a child who does obtain possession of a lighter can easily move the "on/off" switch from the "off" position to the "on" position. This type of argument was rejected by the Pennsylvania Supreme Court in *Davis v. Berwind Corp.*, 547 Pa. 260, 690 A.2d 186 (1997). In *Davis*, an employee of a meat company suffered an injury after placing her hand into a blender whose blades were still spinning after the machine had been turned off. The blender included a visible warning reading "DANGER, KEEP FINGERS OUT OF DOOR OPENINGS." Davis argued that the machine was defective, *inter alia*, for not warning that the blades of the blender would continue to spin after the power had been turned off. The Supreme Court found that a warning regarding the continuing spinning was not necessary:

Appellant's initial error lies in the characterization of the "danger as being the continued rotation of the blades of the meat blender after the power had been turned off." Instead, the danger to be cautioned against is the placement of the operator's hands at any position near the blades. An instruction concerning the continued rotation of the

blades becomes necessary only if the operator blatantly ignores the specific warning to keep fingers away from the door openings. Appellant is in effect suggesting that we require a manufacturer to warn against dangers that may arise if the stated warnings are not heeded. Such requirement is unreasonable and unwarranted since the law presumes that warnings will be obeyed.

*Id.* at 190 (citations omitted). As with the plaintiff in *Davis*, the Hittles had an obligation to read and obey the warning included with the lighter. The fact that the warning did not mention the deficiency of the "on/off" switch is irrelevant because the Hittles were properly instructed to keep the lighter away ·from children. Had that warning been ·followed, no injuries would have been sustained. We will not require Tokai to warn of dangers that may arise in the event that its already-present warnings are ignored. *See also Pavlik*, 135 F.3d at 883 (noting that the presumption that the plaintiff has read and heeded a warning "works in favor of the manufacturer or seller of a product where an adequate warning has been provided") (footnote omitted).

While *Davis* and *Pavlik* were both strict liability cases, we predict, consistent with our opinion in *Shouey*, that the Pennsylvania Supreme Court would place an obligation on a negligence plaintiff to both read and heed the warnings already existing on the product. *See Shouey*, 49 F.Supp.2d at 420–421 (predicting that the Pennsylvania Supreme Court would apply the "heeding presumption" in negligent failure to warn cases) [8]

on the inadequate warnings claim at least in part because the appellant did not argue to the Superior Court that summary judgment on that claim was improper. *Phillips*, 773 A.2d at 810 n. 7. We note that regardless of the reasons for the Superior Court's affir-

mance, we agree with the trial court's result and reasoning.

**8.** We note that the Hittles do not challenge Tokai's presentation of the warning, i.e., the warning's print size or the location. As such, they remain obligated to have read and heed-

The Hittles' claim of negligent failure-to-warn, then, lacks merit for both of the following independent reasons: (1) the risk that children who operate the lighter may cause injuries is open and obvious; and (2) the warning to keep the lighter away from children was adequate as a matter of law.

## VIII. BREACH OF WARRANTY

The Hittles advance claims for breach of warranty. Specifically, they argue that Tokai breached both the implied warranty of merchantability, see 13 P.C.S. § 2314, and an express warranty that was present on the Aim 'N Flame's packaging.

■■■ "[T]he implied warranty of merchantability ... arise[s] by operation of law and serve[s] to protect buyers from loss where the goods purchased are below commercial standards...." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir.1992) (citation omitted). "In order to be merchantable, goods must be 'fit for the ordinary purposes for which such goods are used.'" *Id.* (quoting 13 Pa.C.S.A. § 2314(b)(3)).

■■■ "To establish a breach of either warranty, plaintiffs must show that the equipment they purchased from defendant was defective." *Id.* While the Third Circuit refers to a product which is not merchantable as being required to be "defective," a product need not be defective as defined under strict products liability in order to be not fit for ordinary purposes. *See Azzarello v. Black Bros., Inc.*, 480 Pa. 547, 391 A.2d 1020, 1026 (1978) (recogniz-

ing that "defective condition" is a term of art invoked when strict liability is appropriate). The Third Circuit has allowed plaintiffs to establish a defect under various theories. *See, e.g., Altronics*, 957 F.2d at 1105–1106 (noting that a plaintiff may establish the existence of a defect through, *inter alia*, circumstantial evidence of a malfunction); *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1309–10 (3d Cir. 1995) (allowing a plaintiff to introduce evidence of only a design defect, even absent a malfunction). Furthermore, the Third Circuit has suggested that the finding of a defect necessarily indicates the finding of a breach of the implied warranty of merchantability. *InfoComp, Inc. v. Electra Products, Inc.*, 109 F.3d 902, 907–908 (3d Cir.1997) (finding that when a manufacturer violated an express warranty to be "free from defect" for 90 days, it necessarily violated the "much broader" implied warranty of merchantability) (citing *Altronics*, 957 F.2d at 1105). Whether a product is merchantable is a question of fact for the jury. *Kriscuinas v. Union Underwear Co.*, No. CIV. A. 93–4216, 1994 WL 523046, at *6 (E.D.Pa. September 27, 1994) (citation omitted).

■■■ The Hittles assert that the Aim 'N Flame was defective, or substandard, due to the absence of childproof features and a malfunction of the "on/off" switch on the day of the fire.[9] Tokai argues that the Aim 'N Flame was not defective because it was completely safe for all of those individuals who were intended users. Tokai mis-

ed the warning. *See Pavlik*, 135 F.3d at 886–87 (citation omitted).

**9.** Notwithstanding Tokai's assertions to the contrary, a reasonable inference can be made that the "on/off" switch malfunctioned as Jacob was handling the lighter. According to John's deposition, when he initially placed the lighter on the ledge above the kitchen, he made certain that the lighter was in the "off"

position. (John Hittle Dep., Plaintiffs' Exhibit 6, at 101–102.) *See Pavlik*, 135 F.3d at 881–82 (stressing the need at the summary judgment stage to grant all reasonable inferences to the non-moving party, and finding that a reasonable jury could infer that the decedent inhaled butane from the only can that was present on his bureau).

states Pennsylvania law by limiting the applicability of a breach of warranty claim to the lighter's intended users. 13 Pa. C.S.A. § 2318 states:

> Third party beneficiaries of warranties express or implied
>
> The warranty of a seller whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

*Id.* It is clear that Tokai's implied warranty of merchantability extends to the members of the Hittle household whom Tokai could have reasonably expected to be affected by the Aim 'N Flame, which include Shirley and Jessica. The statute requires only that household members *be affected* by the product. This demonstrates that the person who can reasonably, i.e., foreseeably be expected to be harmed, rather than only the person for whose use the product was intended, is covered. The fact that Jacob was not an intended user of the lighter is irrelevant.

A reasonable jury could conclude, based on the inference of a malfunction of the "on/off" switch and the related factual issue of whether the lighter could have been designed to be more child-resistant, that the Aim 'N Flame was "defective" and not merchantable. *See Shouey,* 49 F.Supp.2d at 421 (denying summary judgment on a breach of warranty claim where a T-shirt ignited and burned easily, and could have

been made of alternative, less flammable material).[10]

In support of their claim for breach of express warranty, the Hittles assert that the statements on the Aim 'N Flame's packaging regarding the "on/off" switch, i.e., that the "on/off" switch is listed among the "benefits/features," constituted an express warranty. These statements do not rise to the level of an express warranty. *See generally* 13 Pa.C.S.A. § 2313. Tokai is entitled to summary judgment on the claim of breach of express warranty.

### IX. MISREPRESENTATION

The Hittles contend that Tokai is liable for misrepresentation because the Aim 'N Flame's advertising, packaging, and brochures misrepresented that the lighter was safe. Specifically, the Hittles argue that Tokai made misrepresentations by (1) stating on the lighter's packaging that· the lighter was equipped with a functional "on/off" switch; and (2) depicting the lighting of birthday cake candles, a fireplace log, and charcoal, thus representing the lighter to be safe for household use. (Tokai's Brief at 34.)

The Hittles' misrepresentation claim is governed by Restatement (Second) of Torts § 402B, which provides:

> MISREPRESENTATION BY SELLER OF CHATTELS TO CONSUMER
> One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical

---

**10.** Tokai improperly relies on another part of the *Shouey* opinion, in which we ruled that a lighter manufacturer did not breach its implied warranty of merchantability where there was no evidence that the lighter did anything other than serve its ordinary purpose, i.e., produce a flame. *Shouey,* 49 F.Supp.2d at

429. The lighter in the instant case is distinguishable in that it should have been designed not only to produce a flame, but also to be nonfunctional when the "on/off" switch was in the "off" position. As stated above, an inference can be made that the lighter's "on/off" switch malfunctioned.

harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though

(a) it is not made fraudulently or negligently, and

(b) the consumer has not bought the chattel from or entered into any contractual relation with the seller.

*Id.* Our analysis is guided by the Pennsylvania Supreme Court case of *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975). In *Berkebile,* the plaintiff's decedent died in a helicopter crash, and the plaintiff sued the manufacturer of the helicopter for wrongful death. The plaintiff argued that the defendant's statement in an advertising brochure that "you are assured of a safe, dependable aircraft" constituted a misrepresentation actionable under § 402B. The court rejected this argument, characterizing the statement as "mere puffing," which is not compensable under § 402B. *Id.* at 903; *see also* Restatement (Second) of Torts § 402B, comment g; *Huddleston v. Infertility Center of America,* 700 A.2d 453, 461 (Pa.Super.1997) (citation omitted). If the defendant in *Berkebile* engaged in puffing, then certainly Tokai, to the extent that the lighter's packaging even contained any kind of "representation" at all, should not be held liable. Summary judgment will be granted on the Hittles' claim for misrepresentation.

### X. PUNITIVE DAMAGES

The legal standard for punitive damages on state law claims must be discerned from state law. *See Griffiths v. CIGNA Corp.,* 857 F.Supp. 399, 409–410 (E.D.Pa.1994) (citation omitted), *aff'd,* 60 F.3d 814 (3rd Cir.1995). "A court may award punitive damages only if the conduct was malicious, wanton, reckless, willful, or oppressive." *Rizzo v. Haines,* 520 Pa. 484, 555 A.2d 58, 69 (1989) (citation omitted). "The proper focus is on the act itself together with all the circumstances including the motive of the wrongdoer and the relations between the parties...." *Id.* (citation omitted). "In addition, the actor's state of mind is relevant." The act or omission must be intentional, reckless, or malicious. *Id.* (citation omitted).

While we do not go into detail, we note that the Hittles have presented a considerable amount of documentary evidence from which a reasonable jury could determine that Tokai knew the dangers accompanying its lighter being used by a child, refused to make its lighters child-resistant, and suppressed information concerning the Aim 'N Flame's dangerous properties. At this stage of the proceeding, we find that the Hittles have produced sufficient evidence to justify an award of punitive damages.

### XI. CONCLUSION

Based on the foregoing reasons, Tokai's motion for summary judgment will be granted in part and denied in part.